OPINION
{¶ 1} Defendant-appellant, Nicholas Gilfillan ("appellant"), appeals the judgment of the Franklin County Court of Common Pleas, which convicted him of rape.
 {¶ 2} The Franklin County Grand Jury indicted appellant on one count of rape in violation of R.C. 2907.02(A)(1)(b). The indictment stated that the rape victim, J.C., was four years old during the incident and that appellant raped J.C. "on or about January 1, 2006 to February 23, 2006." Appellant pleaded not guilty to the rape charge. *Page 2 
 {¶ 3} Appellant took a polygraph examination. Before the examination, appellant, appellant's counsel, and plaintiff-appellee, the State of Ohio ("appellee"), stipulated that the person administering the examination could testify about the results. The parties also stipulated that they could present arguments about the weight of the results.
 {¶ 4} Douglas Wells administered appellant's polygraph. Wells concluded in a report that appellant did not tell the truth during the polygraph.
 {¶ 5} After appellant took the polygraph, he signed a jury waiver stating that he understood his right to a jury, that he voluntarily waived that right, and that he desired to have the court decide, after a trial, whether he was guilty. Before trial, appellant told the court that he waived his right to a jury freely and not under force, coercion or due to any promises. Moreover, appellant told the court that he understood his jury right and his choice between having a jury, as opposed to the court, decide the facts. Appellant's counsel confirmed that appellant understood his jury right and that appellant was voluntarily waiving that right.
 {¶ 6} At the one-day trial on September 18, 2007, appellee called Wells to testify. Wells testified as follows. Wells had been working for the polygraph unit of the Columbus Police Department for four months, and he had been administering polygraph examinations for 37 years. Wells administered appellant's polygraph examination. During the examination, Wells asked appellant the following questions: (1) "`Did you ever rub your * * * naked penis on [J.C.'s] butt?'"; (2) "`Did you ever insert your finger into [J.C.'s] anus?'"; and (3) "`Did you ever participate in any type of sexual activity with *Page 3 
[J.C.]?'"(Sept. 18, 2007 Tr. ["Sept. Tr."] 12.) Appellant answered "`no'" to these questions. (Sept. Tr. 12.) Wells concluded that appellant's responses were not truthful.
 {¶ 7} On cross-examination, Wells verified that polygraph results are subjective and based on the examiner's personal interpretation. Wells also verified that he was testifying to his opinion about the conclusions of appellant's polygraph.
 {¶ 8} Next, appellant's counsel stipulated that the court could admit into evidence a video recording of an interview between J.C. and a social worker identified as "Kerri." (Sept. Tr. 18.) Appellee played the video in court. The contents of the interview did not indicate the time or place, but the video introduction and disc identify the date of the video as February 23, 2006. The video also depicted the following. At the beginning of the interview, J.C. asked Kerri if she was a doctor. Kerri said that she was a social worker who works with a doctor and a nurse. Kerri said that she wants to make sure "kids are okay," and J.C. responded: "Daddy sticked his finger in my butt and daddy sticked his winkie in my butt." (Sept. Tr. 18.) Kerri asked: "Who said that?" (Sept. Tr. 18.) J.C. responded that it was his grandmother. J.C. clarified that he has two fathers and that it was "Daddy Nick" who raped him five times at "Daddy Nick's" father's house. (Sept. Tr. 20.) J.C. said that he was lying down during the rapes, his body was "wiggling," and "[p]ee" came out of "Daddy Nick's" "winkie." (Sept. Tr. 27, 29.) J.C. indicated that "Daddy Nick" says, "`I love you'" during the rapes. (Sept. Tr. 30.) J.C. initially stated that his mother saw him being raped, but J.C. later said that his mother was at work at Lowe's when he was being raped. J.C. also stated that he was four years old during the interview. In addition, J.C. stated that his "winkie" was smaller than "Daddy Nick's" and that "Daddy Nick's" "winkie" "sticks out." (Sept. Tr. 24, 25.) *Page 4 
Moreover, J.C. said that the rapes hurt him. Several times during the interview, J.C. indicated that he was finished talking, but Kerri continued the questioning. At the end of the interview, Kerri stated that they were going to see a nurse. Kerri asked J.C. if his "butt" hurt "right now," and J.C. said, "[y]es." (Sept. Tr. 30-31.)
 {¶ 9} J.C.'s mother, Jacqueline, testified as follows on appellee's behalf. J.C. was born on April 13, 2001. Jacqueline is married to appellant. They were married in February 2006 and were living together at that time. Jacqueline said that she and appellant "will be" married "two years in February." (Sept. Tr. 33.) Appellant is not J.C.'s biological father, but J.C. calls appellant "`Daddy Nick.'" (Sept. Tr. 34.) Jacqueline was working at Lowe's in February 2006.
 {¶ 10} After this testimony, appellant's counsel stipulated that the child in the video recording was J.C. Appellant's counsel asked Jacqueline no questions on cross-examination.
 {¶ 11} Gail Horner is a nurse at the Center for Child and Family Advocacy ("Advocacy Center") at Children's Hospital. Horner testified on appellee's behalf that she examined J.C. Horner testified that the examination showed no physical abnormalities, but that this result did "not negate the history that [J.C.] gave of sexual abuse." (Sept. Tr. 41.) Horner explained that she has seen children's bodies heal quickly after rapes. Horner did not testify about when she examined J.C., nor did she indicate when J.C. alleged that the rapes occurred.
 {¶ 12} On cross-examination, Horner testified that the police and prosecution have representatives at the Advocacy Center, but defense attorneys do not have *Page 5 
representatives at the Advocacy Center. Horner denied that the Advocacy Center's work "surrounds or involves the prosecution of people." (Sept. Tr. 44.)
 {¶ 13} Appellee rested its case, and appellant's counsel moved for an acquittal pursuant to Crim. R. 29(A). Appellant's counsel argued that appellee failed to prove that appellant raped J.C. during the time frame stated in the indictment. The court overruled the motion, but conceded that the evidence was not "overwhelming with regard to the time." (Sept. Tr. 47-48.)
 {¶ 14} Appellant's counsel called no witnesses and submitted no evidence on appellant's behalf. Appellant's counsel renewed the acquittal motion, and the court overruled the motion.
 {¶ 15} After the trial, the court found appellant guilty of rape. The court believed the statements that J.C. made to the social worker that appellant raped him. The court also stated that "the nail in the coffin * * * is the polygraph." (Sept. Tr. 57.) The court stated that the polygraph results conclusively established that appellant was not truthful during the examination.
 {¶ 16} Subsequently, appellant retained new counsel who filed, on October 2, 2007, a Crim. R. 33 motion for new trial. New counsel alleged under Crim. R. 33(A)(1) that former counsel rendered ineffective assistance by (1) not objecting to the admission of J.C.'s statements in the interview with the social worker, (2) not cross-examining Jacqueline, and (3) not calling any defense witnesses. Additionally, new counsel alleged under Crim. R. 33(A)(4) that there was insufficient evidence to prove that appellant raped J.C. Lastly, new counsel alleged under Crim. R. 33(A)(5) that the court erred by admitting into evidence the statements J.C. made in the interview. *Page 6 
 {¶ 17} On November 14, 2007, the court held a hearing on the Crim. R. 33 motion. At the hearing, the court concluded that it did not err by admitting J.C.'s statements into evidence. However, the court asked the parties to submit additional briefing on whether former counsel rendered ineffective assistance and whether there was insufficient evidence to prove that appellant raped J.C.
 {¶ 18} On December 17, 2007, new counsel filed supplemental briefing on the Crim. R. 33 motion. New counsel reiterated previous arguments and added that former counsel was ineffective for (1) stipulating to the admission of the polygraph results, and (2) not effectively cross-examining Horner and Wells.
 {¶ 19} On December 20, 2007, the court held another hearing on the Crim. R. 33 motion. At the hearing, the court concluded that sufficient evidence proved that appellant raped J.C. The court then addressed the motion for a new trial based on ineffective assistance. The court said that it was "very upsetting" that "[n]one of the evidence presented by the prosecution was attacked * * * by the defense." (Dec. 20, 2007 Tr. ["Dec. Tr."] 5-6.) The court stated, however, that the ineffective assistance issue is better addressed on appeal. But the court also concluded that former counsel did not render ineffective assistance because there was no "reasonable probability that but for counsel's errors, the result would have been different." (Dec. Tr. 8.) The court explained that, if it granted a new trial, the inculpating polygraph results would still be admissible due to the stipulation.
 {¶ 20} On February 15, 2008, new counsel filed a Crim. R. 29(C) motion for acquittal and, alternatively, another Crim. R. 33(A)(4) motion for new trial. New counsel *Page 7 
argued that insufficient evidence established that appellant raped J.C. during the time frame stated in the indictment.
 {¶ 21} In March 2008, new counsel filed another Crim. R. 33 motion for new trial. New counsel filed the motion on "new evidence." New counsel claimed that the new evidence established that former counsel provided erroneous information when advising appellant to waive jury and that this information established that former counsel rendered ineffective assistance. In a supplemental motion filed in March 2008, new counsel argued that the erroneous information rendered appellant's jury waiver involuntary, unknowing, and unintelligent.
 {¶ 22} The new evidence consisted of a March 2008 affidavit from former counsel. In the affidavit, former counsel stated the following. Former counsel, appellee, and the court discussed appellant's case "off the record." The parties discussed the polygraph results, and the court stated that polygraph results "were often manipulated" and that it "placed little to no weight on polygraph results." Former counsel informed appellant about the court's opinion about polygraph results and advised appellant to waive his jury right and have a bench trial. Appellant decided to have a bench trial based on former counsel's "recommendation and advice."
 {¶ 23} Appellant also submitted his own March 2008 affidavit, which stated the following. Former counsel told appellant that the court "placed little to no weight on polygraph results" and told appellant that it was in his "best interest" to have a bench trial. Appellant decided to have a bench trial based on former counsel's "advice and information." Recognizing that the court considered the polygraph results when it convicted him, appellant contended that former counsel's "information turned out to be *Page 8 
erroneous." Appellant stated that he did not "intelligently or knowingly" waive his jury right because he relied on former counsel's "erroneous" information. Appellant also stated that "[i]f I knew before trial that this information was wrong, I would not have waived my right to a jury trial."
 {¶ 24} Thereafter, the court held a hearing and denied new counsel's March 2008 request for a new trial. The court stated that the affidavits of appellant and former counsel were false. The court stated that it did not tell former counsel that it "put no stock" in a polygraph examination. (Mar. 20, 2008 Tr. ["Mar. Tr."] 7.) The court stated that it "simply advised" former counsel that it would be a mistake to stipulate to the results of a polygraph examination because "a polygraph is largely dependent upon the operator." (Mar. Tr. 6.) The court also said that it did not advise that appellant should waive his jury right and instead have a bench trial. The court criticized former counsel for having appellant take the "stipulated polygraph." (Mar. Tr. 7.) The court also criticized former counsel for presenting no evidence and stipulating to "everything." (Mar. Tr. 6-7.) Lastly, the court denied, as untimely, the February 2008 Crim. R. 29(C) motion for acquittal and the alternative Crim. R. 33(A)(4) new trial motion.
 {¶ 25} Subsequently, new counsel proffered testimony for the record. According to new counsel, appellant, had he been called to testify, would have stated that he did not have any sexual contact with J.C. and that he is "100 percent not guilty." (Mar. Tr. 41.)
 {¶ 26} New counsel proffered testimony from appellant's father, Richard Kaiser ("Richard"). Counsel noted that J.C. claimed that the rape occurred at Richard's home. According to new counsel, Richard, had he been called to testify, would have said that *Page 9 
he did not see appellant rape J.C., and Richard would have explained that "during the relevant time period between January and February of 2006," he was not working due to an illness and "was in the house pretty much at all times." (Mar. Tr. 41-42.)
 {¶ 27} New counsel also proffered testimony from appellant's grandfather, Donald Kaiser ("Donald"). According to new counsel, Donald, had he been called to testify, would have stated that he was in Richard's home "at all times" because of a physical disability. (Mar. Tr. 42.) Donald would have also testified that "he did not witness any inappropriate conduct by" appellant. (Mar. Tr. 42.)
 {¶ 28} Before the court sentenced appellant, Jacqueline indicated that J.C. is in therapy due to the emotional and social problems that he has experienced after the rapes. J.C.'s court advocate stated that J.C. wanted appellant "put away forever so [appellant] can no longer hurt him." (Dec. Tr. 23.) At the sentencing hearing, new counsel argued that the cruel and unusual punishment clauses of the federal and state constitutions prohibited the court from sentencing appellant to life imprisonment. The court rejected this argument and imposed a life sentence. The court stated, however, that appellant would be eligible for parole consideration in ten years. New counsel also argued that the recently enacted sex offender classification laws were unconstitutional. The court disagreed and classified appellant as a Tier III sexual offender with lifetime registration duties.
 {¶ 29} Appellant appeals, raising 11 assignments of error:
 I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR NEW TRIAL PURSUANT TO CRIMINAL RULE 33(A)(4), AS THE STATE FAILED TO ESTABLISH ALL OF THE ELEMENTS OF RAPE BEYOND A REASONABLE DOUBT AND THE VERDICT WAS NOT SUSTAINED BY SUFFICIENT EVIDENCE. *Page 10 
 II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29 (AND RENEWED MOTION FOR ACQUITTAL) AS THE STATE FAILED TO PROVE THAT THE ALLEGED OFFENSE OCCURRED WITHIN THE TIME FRAME ALLEGED IN THE INDICTMENT.
 III. THE TRIAL COURT'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 IV. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR NEW TRIAL PURSUANT TO CRIMINAL RULE 33(A)(1) BECAUSE APPELLANT WAS PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL.
 V. THE APPELLANT'S JURY WAIVER WAS INVOLUNTARILY MADE, AS THE APPELLANT RELIED TO HIS DETRIMENT ON FALSE REPRESENTATIONS MADE BY HIS TRIAL COUNSEL.
 VI. THE TRIAL COURT ERRED IN ADMITTING THE ALLEGED VICTIM'S OUT-OF-COURT STATEMENTS TO THE SOCIAL WORKER WITHOUT FIRST HOLDING A COMPETENCY HEARING.
 VII. THE APPELLANT'S RIGHT TO CONFRONTATION AS GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION WAS VIOLATED WHEN THE COURT ADMITTED THE ALLEGED VICTIM'S OUT-OF-COURT STATEMENTS.
 VIII. THE APPELLANT'S RIGHT TO CONFRONTATION AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN THE COURT ADMITTED THE ALLEGED VICTIM'S OUT-OF-COURT STATEMENTS.
 IX. THE TRIAL COURT ERRED IN RELYING ON THE APPELLANT'S POLYGRAPH EXAMINATION, AS THE "STIPULATED" POLYGRAPH WAS NEVER ADDRESSED IN OPEN COURT AND THE APPELLANT WAS NEVER PERSONALLY ADDRESSED REGARDING THE STIPULATION. *Page 11 
 X. THE APPELLANT'S LIFE SENTENCE UNDER THE ALLEGED FACTS OF HIS CASE AMOUNTS TO CRUEL AND UNUSUAL PUNISHMENT UNDER BOTH THE FEDERAL AND OHIO CONSTITUTIONS.
 XI. THE APPELLANT'S DESIGNATION OF A TIER III SEX OFFENDER UNDER THE ADAM WALSH ACT IS UNCONSTITUTIONAL.
 {¶ 30} In his first assignment of error, appellant argues that the trial court erred by denying the October 2, 2007 motion for new trial filed under Crim. R. 33(A)(4) on insufficient evidence grounds. We disagree.
 {¶ 31} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52. We examine the evidence in the light most favorable to the state and determine whether any rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of the crime. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. Jenks at 273. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. See Jenks, paragraph two of the syllabus;Yarbrough at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim).
 {¶ 32} Appellant was convicted of rape, pursuant to R.C. 2907.02(A)(1)(b), which states: *Page 12 
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 * * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 {¶ 33} In his new trial motion, appellant did not dispute J.C. being a victim less than 13 years of age. Rather, appellant argued that the evidence did not sufficiently establish that he engaged in sexual conduct with J.C. In the interview with the social worker, however, J.C. described appellant subjecting him to anal intercourse. This conduct constitutes sexual conduct under the rape statute. See R.C. 2907.01(A). Therefore, this testimony alone was sufficient to prove that appellant raped J.C.
 {¶ 34} Next, appellant argues against the credibility of (1) J.C.'s out-of-court statements to the social worker, and (2) the polygraph results. Credibility issues are irrelevant, however, in a sufficiency of the evidence analysis. Jenks, paragraph two of the syllabus;Yarbrough at ¶ 79.
 {¶ 35} Having concluded that sufficient evidence proved that appellant raped J.C, we hold that the trial court did not err by denying appellant's October 2, 2007 Crim. R. 33(A)(4) motion. Accordingly, we overrule appellant's first assignment of error.
 {¶ 36} In his second assignment of error, appellant argues that the trial court erred by denying the motions for acquittal raised and renewed at trial pursuant to Crim. R. 29(A). Likewise, appellant argues that the trial court erred by denying the subsequent February 15, 2008 motion for acquittal, pursuant to Crim. R. 29(C), and, alternatively, for a new trial under Crim. R. 33(A)(4). *Page 13 
 {¶ 37} A Crim. R. 33 new trial motion not based on newly discovered evidence is due 14 days after a verdict. Crim. R. 33(B). Here, the trial court found appellant guilty of rape on September 18, 2007. Therefore, the February 15, 2008 Crim. R. 33(A)(4) motion was untimely, and the trial court did not err by denying that motion.
 {¶ 38} We also conclude that the trial court did not err by denying the February 15, 2008 Crim. R. 29(C) motion for acquittal. Crim. R. 29(C) states:
 If a jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within fourteen days after the jury is discharged or within such further time as the court may fix during the fourteen day period. * * *
 {¶ 39} Crim. R. 29(C) refers to jury trials. Regardless of whether Crim. R. 29(C) applies to bench trials, we note that appellant filed the Crim. R. 29(C) motion beyond the 14-day deadline, and appellant did not secure a deadline for a "further time as the court may fix during the fourteen day period."
 {¶ 40} We next address the motions for acquittal raised and renewed at trial. Crim. R. 29(A) governs these motions and states:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense * * *.
 {¶ 41} We will only reverse a trial court's decision to deny a motion for acquittal if, after viewing the evidence in a light most favorable to the prosecution, we conclude that "reasonable minds could only reach the conclusion that the evidence failed to prove all the elements of the crime beyond a reasonable doubt." State v. Neptune (Apr. 21, 2000), Athens App. No. 99CA25, citing Jenks, paragraph two of the syllabus. *Page 14 
 {¶ 42} A motion for acquittal focuses on the legal sufficiency of the evidence, not its weight or credibility. Therefore, in reviewing a trial court's decision to deny a motion for acquittal, "`our analysis of the evidence focuses not upon its weight or credibility, * * * but rather its quantitative sufficiency to establish beyond a reasonable doubt each element of the offense.'" State v. Jackson (Feb. 20, 2001), Franklin App. No. 00AP-183 ("Jackson I"), quoting State v. Kline (1983),11 Ohio App.3d 208, 213. See, also, State v. Carlisle (Oct. 7, 1997), Lawrence App. No. 97 CA 13 (acknowledging that an appellate court does not address whether it should believe evidence when reviewing its sufficiency).
 {¶ 43} Appellant argues that the trial court erred by denying the Crim. R. 29(A) motions for acquittal because appellee failed to prove that appellant raped J.C. during the time frame stated in the indictment. The indictment alleged that appellant raped J.C. "on or about January 1, 2006 to February 23, 2006." The precise date of a rape is not an essential element of the crime. State v. Reinhardt, Franklin App. No. 04AP-116, 2004-Ohio-6443, ¶ 20; State v. Sellards (1985),17 Ohio St.3d 169, 171. "Thus, a reasonable degree of latitude and inexactitude is allowed with respect to the timing of the offense."State v. Crosky, Franklin App. No. 06AP-655, 2008-Ohio-145, ¶ 45. "`Where the exact date and time of an offense are not material elements of a crime [or] essential to the validity of a conviction, the failure to prove such is of no consequence and it is sufficient to prove that the alleged offense occurred at or about the time charged.'"Reinhardt at ¶ 20, quoting State v. Madden (1984), 15 Ohio App.3d 130,131; Crosky at ¶ 45; Tesca v. State (1923), 108 Ohio St. 287, syllabus. *Page 15 
 {¶ 44} Here, no one testified concerning the specific time frame in which appellant raped J.C. This failure did not entitle appellant to an acquittal, however. Reinhardt at ¶ 20; Sellards at 171; Crosky at ¶ 45;Tesca, syllabus. Instead, we conclude that the evidence sufficiently established that appellant raped J.C. during the time frame of the indictment: "on or about January 1, 2006 to February 23, 2006." In particular, in the video-recorded interview with the social worker, J.C. discussed appellant raping him. The video introduction and disc itself refer to February 23, 2006, and we infer that the interview occurred on that date. During the interview, J.C. stated that he experienced physical pain at the time of the rapes, and that he was currently feeling pain. Although Horner testified that J.C.'s examination revealed no physical abnormalities, her testimony did not address J.C.'s claim of pain. Given that we construe the evidence in appellee's favor, we may properly conclude from J.C.'s disclosure of pain that appellant raped him near the time of the February 23, 2006 interview and within the time frame alleged in the indictment.
 {¶ 45} Testimony also narrowed the possible time frame. J.C. indicated that his mother, Jacqueline, was at work at Lowe's during the rapes, and Jacqueline testified that she was working at Lowe's in February 2006. Jacqueline also stated that she and appellant got married in February 2006 and that they lived together at that time. Thus, appellant had a familial relationship with J.C. in February 2006, and appellant had the opportunity to take advantage of that relationship to rape J.C. that month. Considering that we must construe the evidence in appellee's favor, and considering J.C.'s disclosure of pain at the February 2006 interview, we conclude that the evidence about *Page 16 
Jacqueline's work and marriage aids in establishing that appellant raped J.C. in or about February 2006 and within the time frame alleged in the indictment.
 {¶ 46} Absent a material detriment to the preparation of a defense, the prosecution's omission of an offense's specific dates and times is without prejudice and without constitutional consequences.Sellards at 172. Here, appellant failed to demonstrate prejudice from the inexact timing of the rapes. For instance, appellant did not assert an alibi during the time frame specified in the indictment, and he does not contend that the time frame was prejudicially overbroad.
 {¶ 47} For these reasons, we conclude that sufficient evidence established that appellant raped J.C. during the time frame alleged in the indictment. Therefore, the trial court did not err by denying appellant's Crim. R. 29(A) motions for acquittal. Consequently, we overrule appellant's second assignment of error.
 {¶ 48} In his third assignment of error, appellant argues that his rape conviction is against the manifest weight of the evidence. We disagree.
 {¶ 49} In determining whether a verdict is against the manifest of the evidence, we sit as a "`thirteenth juror.'" Thompkins at 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. We reverse a conviction on manifest weight grounds for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'"Thompkins at 387, quoting Martin at 175. Moreover, *Page 17 
"`it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" State v. Brown, Franklin App. No. 02AP-11, 2002-Ohio-5345, ¶ 10, quoting State v. Long (Feb. 6, 1997), Franklin App. No. 96APA04-511.
 {¶ 50} Here, appellant reiterates that appellee did not prove that he raped J.C. within the time frame stated in the indictment. We have held, however, that sufficient evidence proved that appellant raped J.C. during the indictment's time frame. Given the record here, we find no miscarriage of justice for the trial court, as trier of fact, to have accorded weight and credibility to the evidence.
 {¶ 51} Next, appellant argues against the credibility of the polygraph results. Although the parties stipulated to the admissibility of the polygraph results, the parties reserved the right to present arguments about the weight of those results. Appellant contends that the polygraph results were not credible because Wells conceded that polygraph results are subjective and based on the examiner's personal interpretation. However, Wells' 37 years of administering polygraph examinations allowed the trial court to conclude that Wells correctly interpreted appellant's polygraph results.
 {¶ 52} Appellant also argues that the polygraph results were not credible because Wells was vague about appellant's untruthfulness. Appellant is incorrect. Wells testified that appellant untruthfully denied three questions that directly asked appellant if he engaged in sexual activity with J.C.
 {¶ 53} Appellant also challenges J.C.'s credibility. Appellant asserts that J.C. provided coached answers during the February 2006 interview. He emphasizes that *Page 18 
J.C. stated during the interview that his grandmother told him that appellant raped him, and appellant claims that J.C. delayed answers to the social worker's questions "as if he was * * * trying to give the answer that he thought * * * wanted to be heard." Appellant also claims that J.C. consistently expressed his desire to end the interview, as if he was not comfortable providing coached answers. Appellant also notes that J.C. was inconsistent during the interview; J.C. first said that his mother witnessed appellant raping him, but later J.C. said that his mother was at work during the rapes. Lastly, appellant argues that the other witnesses negated J.C.'s credibility. Specifically, Jacqueline did not testify to seeing appellant rape J.C., and Horner found no physical abnormalities with J.C. during examination.
 {¶ 54} Nevertheless, J.C. was clear, descriptive, and unequivocal about how appellant anally raped him, and J.C. verified the body parts that appellant used during the rapes. This testimony supports J.C.'s credibility and indicates that he did not give contrived or coached answers. The lack of corroborating physical evidence and eyewitness testimony does not undermine J.C.'s credibility. A sex offense victim's testimony need not be corroborated to sustain a conviction. State v.Laseur, Warren App. No. CA2002-10-117, 2003-Ohio-3874, ¶ 14. Moreover, Horner explained that J.C.'s physical examination did not negate his sex abuse claim because young rape victims' bodies can heal quickly. Therefore, we find no miscarriage of justice for the trial court, as trier of fact, to have accorded weight and credibility to J.C.'s assertion that appellant raped him.
 {¶ 55} Accordingly, we conclude that appellant's rape conviction is not against the manifest weight of the evidence. We overrule appellant's third assignment of error. *Page 19 
 {¶ 56} We next address appellant's fifth assignment of error, which concerns his jury waiver. A jury waiver must be voluntary, knowing, and intelligent. State v. Bays, 87 Ohio St.3d 15, 19, 1999-Ohio-216. If the record shows a jury waiver, a defendant's verdict will not be set aside except on a plain showing that the waiver was not freely and intelligently made. Id. Moreover, a written jury waiver is presumptively voluntary, knowing, and intelligent. Id. Here, the record contains appellant's signed jury waiver. Therefore, pursuant to Bays, appellant must overcome the presumption that he voluntarily, knowingly, and intelligently waived his right to a jury.
 {¶ 57} Appellant claims that his jury waiver was not voluntary, knowing, and intelligent because former counsel provided erroneous information when advising appellant to waive jury. Specifically, appellant contends that, after he failed the polygraph examination, former counsel advised him to waive jury and have a bench trial because the court placed little to no weight on polygraph results. Appellant asserts that former counsel's advice was wrong because the trial court found him guilty of rape based, in part, on the polygraph results. Appellant raised this issue to the trial court in an untimely March 2008 Crim. R. 33 motion. See Crim. R. 33(B). Regardless, we find no merit to the issue.
 {¶ 58} According to the trial court, it did not specifically tell former counsel that it placed little to no weight on polygraph results. The court acknowledged, however, that it spoke unfavorably about the polygraph stipulation and that it told former counsel that polygraph examinations are "largely dependent upon the operator." (Mar. Tr. 6.) This statement confirms that the court had concerns about polygraph examinations. The court's concerns gave former counsel a sound basis to advise appellant to waive jury *Page 20 
and have a bench trial because the parties had already agreed to the admissibility of the polygraph examination, and appellant failed that examination. It is irrelevant that the court ultimately decided to accord weight at trial to appellant's polygraph results; former counsel based his advice on the court's express concerns about polygraph examinations. Accordingly, when former counsel advised appellant to waive jury, he did not provide erroneous information that rendered appellant's jury waiver involuntary, unknowing, and unintelligent.
 {¶ 59} Moreover, the jury waiver that appellant signed specified that he was acting voluntarily, and appellant and former counsel confirmed to the court before trial that appellant's jury waiver was voluntary, knowing, and intelligent. Appellant confirmed to the court before trial that he understood his right to a jury and understood his choice between having a jury decide the facts and having the court decide them. "A defendant can knowingly and intelligently waive his right to a jury trial if he understands `that the choice confronting him [is], on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge.'" (Internal brackets sic.) State v. Turner, 105 Ohio St.3d 331,2005-Ohio-1938, ¶ 26, quoting United States ex rel. Williams v.DeRobertis (C.A.7, 1983), 715 F.2d 1174, 1180.
 {¶ 60} Accordingly, we conclude that appellant's jury waiver was voluntary, knowing, and intelligent. We overrule appellant's fifth assignment of error.
 {¶ 61} We next address appellant's fourth assignment of error, which asserts that the trial court erred in denying his new trial motions that alleged former counsel's ineffective assistance. Ineffective assistance of trial counsel may be raised as a ground *Page 21 
for new trial under Crim. R. 33(A)(1). State v. Farley, Franklin App. No. 03AP-555, 2004-Ohio-1781, ¶ 11. The United States Supreme Court established a two-pronged test for ineffective assistance of counsel.Strickland v. Washington (1984), 466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 62} A properly licensed attorney is presumed competent. State v.Samatar, 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 88, citing Vaughn v.Maxwell (1965), 2 Ohio St.2d 299, 301. Moreover, there is "`a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland at 689. In matters regarding trial strategy, we will generally defer to defense counsel's judgment.State v. Carter, 72 Ohio St.3d 545, 558, 1995-Ohio-104. See, also,State v. Carpenter (1996), 116 Ohio App.3d 615, 626, citingBradley at 144 (holding that we are to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). We will only reverse on trial strategy grounds if defense counsel's strategy deviated from the standard of reasonableness. State v. Burgins (1988),44 Ohio App.3d 158, 160; State v. Newsome, Ashtabula App. No. 2003-A-0076,2005-Ohio-3775, ¶ 8. *Page 22 
 {¶ 63} Appellant first notes that the trial court criticized former counsel's performance. The court criticized former counsel for (1) not challenging appellee's evidence, (2) not presenting evidence in appellant's defense, (3) stipulating to "everything," and (4) having appellant take a "stipulated polygraph." (Mar. Tr. 7.) Appellant's reliance on these criticisms is misplaced, however. Despite these criticisms, the court did not grant appellant's motions for new trial. The court concluded that former counsel's performance did not prejudice appellant because there is no "reasonable probability that but for counsel's errors, the [trial] result would have been different." (Dec. Tr. 8.)
 {¶ 64} Next, appellant argues that former counsel was ineffective for providing erroneous information when advising him to waive jury. Appellant is incorrect. We have already concluded that former counsel did not provide erroneous information when advising appellant to waive jury.
 {¶ 65} Appellant also argues that former counsel was ineffective for stipulating to the admission of appellant's polygraph results into evidence. The polygraph results would not have been admissible at trial without former counsel's stipulation. See State v. Souel (1978),53 Ohio St.2d 123, syllabus. A defense attorney must use utmost caution in determining whether to stipulate to the admissibility of polygraph results. State v. Lascola (1988), 61 Ohio App.3d 228, 235. A defense attorney's decision to stipulate to the admissibility of polygraph results is a matter of trial strategy, however. State v. Evans, Lorain App. No. 07CA009274, 2008-Ohio-4295, ¶ 51.
 {¶ 66} The polygraph stipulation occurred before appellant took the polygraph examination. This was proper procedure. State v. Edwards, Franklin App. No. 05AP-400, *Page 23 2006-Ohio-1344, ¶ 15 (holding that polygraph results are inadmissible without a pre-test stipulation). Former counsel exercised reasonable trial strategy when stipulating to the polygraph results because the defense would have benefited if appellant had passed the polygraph examination. See State v. Jackson (July 28, 2000), Mahoning App. No. 98 C.A. 207 ("Jackson II"). We cannot use the benefit of hindsight to render former counsel's strategic decision deficient just because appellant subsequently failed the polygraph examination. SeeCarpenter at 626; Jackson II. Additionally, former counsel did not leave the polygraph results unchallenged at trial. On Wells' cross-examination, former counsel contested the credibility of the polygraph results. Accordingly, we conclude that former counsel did not render ineffective assistance by stipulating to appellant's polygraph results.
 {¶ 67} Next, appellant complains that former counsel did not cross-examine Jacqueline. Decisions concerning cross-examination fall within the realm of trial strategy. State v. Leonard, 104 Ohio St.3d 54,2004-Ohio-6235, ¶ 146. Reasoned trial strategy existed for former counsel to have concluded that cross-examination of Jacqueline would have been unnecessary, since Jacqueline's direct examination made no mention of appellant raping J.C. In fact, on appeal, appellant relies on Jacqueline's direct examination as she offered it, and appellant notes that Jacqueline did not testify that she saw appellant rape J.C. We also recognize a reasonable strategic decision to get Jacqueline off the stand, due to her being a sympathetic witness as the young victim's mother. See State v. Silverman, Franklin App. No. 05AP-837,2006-Ohio-3826, ¶ 152. *Page 24 
 {¶ 68} Appellant also contends that former counsel inadequately cross-examined Wells. Appellant is incorrect. As we already recognized, former counsel's cross-examination of Wells was substantive; former counsel challenged the credibility of appellant's polygraph results.
 {¶ 69} Appellant complains that former counsel failed to call an expert witness to testify about the unreliability of polygraph results. We conclude, however, that it was within the realm of reasonable trial strategy for former counsel to challenge the polygraph results through Wells' cross-examination instead of through a defense witness. SeeState v. White, Cuyahoga App. No. 90544, 2008-Ohio-4228, ¶ 31.
 {¶ 70} Appellant complains that former counsel failed to call Richard and Donald Kaiser as defense witnesses. Decisions about whether to call witnesses at trial are matters of strategy. See State v. Reed, Franklin App. No. 08AP-20, 2008-Ohio-6082, ¶ 15. Richard and Donald Kaiser would have testified that appellant lived in their home, the place J.C. claimed the raped occurred, and they would have testified that they did not see appellant rape J.C. Richard would have testified that he was in the home "pretty much at all times," and Donald would have testified that he "does not leave the home." (Mar. Tr. 42.) Nevertheless, former counsel could have reasonably concluded that these witnesses were inconsequential, given that the witnesses did not testify to observing all of appellant's conduct in their home and given the likelihood that appellant raped J.C. outside of their presence.
 {¶ 71} Similarly, appellant argues that former counsel was ineffective for advising him against testifying at trial. The record does not disclose whether former counsel advised appellant not to testify or whether appellant decided not to testify regardless of *Page 25 
his counsel's advice. Presumably, appellant would have given self-serving testimony that he did not rape J.C., but J.C.'s clear and descriptive testimony would have discounted appellant's testimony. Likewise, appellant's polygraph results would have impeached his testimony. See Souel, syllabus (holding that stipulated polygraph results are admissible for impeachment). Thus, it was within the realm of reasonable trial strategy for former counsel to advise appellant against testifying. See Reed at ¶ 15. Likewise, we find no prejudice from former counsel advising appellant not to testify.Strickland at 694.
 {¶ 72} Next, appellant argues that former counsel was ineffective for stipulating to the admission of J.C.'s statements in the February 2006 interview with the social worker. This stipulation falls within the realm of trial strategy. State v. Davis, 116 Ohio St.3d 404,2008-Ohio-2, ¶ 347. But appellant asserts that former counsel needed to challenge J.C.'s competency before the court admitted J.C.'s statements into evidence. Appellant also contends that J.C.'s statements were inadmissible hearsay. Lastly, he argues that the admission of J.C.'s statements violated the Confrontation Clauses of the United States and Ohio Constitutions.
 {¶ 73} J.C. was four years old during the February 2006 interview, and appellant argues that the trial court was required to determine whether J.C. was competent during the interview before admitting J.C.'s statements into evidence. Appellant relies on State v. Said,71 Ohio St.3d 473, 477, 1994-Ohio-402, which held that a trial court must find that a child under the age of ten was competent at the time he made an out-of-court statement in order to admit that statement into evidence under Evid. R. 807. That evidentiary rule provides an exception to the rule against the admissibility of hearsay, *Page 26 
and the exception applies to a child's out-of-court statements about sex abuse. Appellant also relies on Evid. R. 601(A), which states that children under ten years of age are not competent to be witnesses if they "appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
 {¶ 74} Said and Evid. R. 601(A) are not applicable to statements admitted under Evid. R. 803(4). State v. Muttart, 116 Ohio St.3d 5,2007-Ohio-5267, ¶ 33, 44-46. Evid. R. 803(4) provides an exception to the rule against the admissibility of hearsay for out-of-court statements made for medical diagnosis or treatment. Evid. R. 803(4) has "inherent reliability." Muttart at ¶ 45. Out-of-court statements of a child under ten years of age can be admitted under Evid. R. 803(4) without a determination on whether the child was competent when he made the statements. Muttart at ¶ 33, 44, 46; State v. Welton, Fayette App. No. CA2006-07-028, 2008-Ohio-2113, ¶ 29, fn. 2.
 {¶ 75} Thus, we examine whether J.C.'s statements in the February 2006 interview were admissible under Evid. R. 803(4). The February 2006 interview does not establish its location. We may infer that the interview took place at the Advocacy Center because the social worker stated during the interview that she works for a nurse, and Advocacy Center Nurse Horner examined J.C. We have repeatedly held that Evid. R. 803(4) can apply to a child's statements to a social worker at the Advocacy Center. State v. Arnold, Franklin App. No. 07AP-789,2008-Ohio-3471, ¶ 37; State v. Ferguson, Franklin App. No. 07AP-999,2008-Ohio-6677, ¶ 35; State v. D.H., Franklin App. No. 07AP-73,2007-Ohio-5970, ¶ 37-48; State v. Edinger, Franklin App. No. 05AP-31,2006-Ohio-1527, ¶ 62-64. *Page 27 
 {¶ 76} Even without inferring that the interview took place at the Advocacy Center, the record establishes that J.C. made statements at the February 2006 interview with knowledge of a medical setting and for purposes of medical diagnosis and treatment. At the beginning of the interview, J.C. asked the social worker if she was a doctor. The social worker identified her occupation and said that she works with a doctor and a nurse, and she said that her job was to make sure that "kids are okay." (Sept. Tr. 18.) After the social worker made these statements, J.C. stated that appellant raped him. J.C. also stated that he felt pain. At the end of the interview, the social worker told J.C. that he was going to see a nurse, and J.C. stated that he was still feeling pain.
 {¶ 77} We further note that the Supreme Court of Ohio has identified several factors for determining whether a child's statements are admissible under Evid. R. 803(4). Muttart at ¶ 49. These factors are (1) whether the interviewer questioned the child in a leading or suggestive manner, (2) whether the interviewer adhered to relevant interview protocols, (3) whether the child had a motive to fabricate, and (4) whether the child understood the need to tell the truth. Id. The consistency of the child's declarations is relevant. Id. The age of the child is also relevant because it "might suggest the absence or presence of an ability to fabricate." Id., citing Broderick v. King's WayAssembly of God Church (Alaska 1991), 808 P.2d 1211, 1219-1220.
 {¶ 78} Here, the social worker did not lead J.C. into disclosing the rapes at the February 2006 interview. J.C. spontaneously revealed the rapes. He consistently told the social worker that appellant anally raped him, and J.C. was descriptive in his report. The record does not suggest that J.C. had a motive to fabricate, and there is no *Page 28 
indication that J.C.'s mother fostered allegations against appellant while in a bitter legal proceeding like a divorce. Muttart at ¶ 49. Moreover, J.C. is a very young child. The Supreme Court of Ohio has recognized that a "child's young age and naiveté may * * * be factors in favor of trustworthiness." Id. at ¶ 49, fn. 6. See, also, State v.Wagner (1986), 30 Ohio App.3d 261, 264 (noting that the tender age of a child is a factor that militates against the possibility that the child has an ulterior motive for making an allegation).
 {¶ 79} Accordingly, we conclude that J.C.'s out-of-court statements during the February 2006 interview were made for purposes of medical diagnosis or treatment. Therefore, we hold that the statements were admissible under Evid. R. 803(4) and that the court need not have determined whether J.C. was competent during the February 2006 interview before admitting J.C.'s statements. See Muttart at ¶ 33, 44, 46;Welton at ¶ 29, fn. 2.
 {¶ 80} We next address whether the admission of these statements violated appellant's right to confront witnesses as guaranteed by theSixth Amendment to the United States Constitution, which provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Sixth Amendment is made applicable to the states through the Fourteenth Amendment to the United States Constitution. Pointer v. Texas (1965), 380 U.S. 400, 403-406. Under Crawford v. Washington (2004), 541 U.S. 36, a witness's testimonial, out-of-court statement offered against an accused to establish the truth of the matter asserted is barred under the Confrontation Clause unless the witness is unavailable and the accused had a prior opportunity to cross-examine the witness. Conversely, the *Page 29 
Confrontation Clause does not implicate non-testimonial statements.Muttart at ¶ 59; State v. Crager, 116 Ohio St.3d 369, 2007-Ohio-6840, ¶ 42;Whorton v. Bockting (2007), 549 U.S. 406, 420; Davis v.Washington (2006), 547 U.S. 813, 822.
 {¶ 81} The "primary purpose" test applies to determining whether statements in police interrogations are testimonial. Davis at 822;Arnold at ¶ 13. The "objective witness" test applies to determining whether statements in non-police interrogations are testimonial. SeeState v. Stahl, 111 Ohio St.3d 186, 2006-Ohio-5482.
 {¶ 82} Here, we acknowledge Horner's testimony that the police and prosecution have representatives at the Advocacy Center. If we infer that J.C.'s February 2006 interview took place at the Advocacy Center, we also conclude that Horner's testimony did not establish that the interview was a police interrogation. Horner clarified that the Advocacy Center's work neither "surrounds" nor "involves the prosecution of people." (Sept. Tr. 44.) Thus, police and prosecution representation at the Advocacy Center does not make the center's employees the agents of the police when providing services to sex abuse victims. Arnold
at ¶ 20. But regardless of where the February 2006 interview occurred, we have recognized its medical purpose. Therefore, we conclude that J.C.'s February 2006 interview was a non-police interrogation and that the "objective witness" test applies.
 {¶ 83} Under the "objective witness" test, a testimonial statement includes one made "`under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Stahl at ¶ 36, quoting Crawford at 52. We focus on "the expectation of the declarant at the time of *Page 30 
making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations." Stahl, paragraph two of the syllabus.
 {¶ 84} Here, as we have recognized, J.C. made statements in the February 2006 interview with knowledge of the medical setting and in furtherance of medical diagnosis and treatment. The record does not establish that J.C. was aware that the statements would be used at a criminal trial. See, e.g., Arnold at ¶ 30 (concluding that it is highly unlikely that a four-year-old child would realize that statements made in a medical setting would be available for use at trial). It is irrelevant that appellee subsequently used J.C.'s statements at trial. See Muttart at ¶ 62; D.H. at ¶ 53. Accordingly, we conclude that J.C.'s statements during the February 2006 interview were non-testimonial. Therefore, the trial court did not violate appellant's Sixth Amendment confrontation rights when it admitted into evidence J.C.'s out-of-court statements.
 {¶ 85} Next, we address whether the trial court's admission of J.C.'s out-of-court statements in the February 2006 interview violated appellant's confrontation rights under Section 10, Article I of the Ohio Constitution, which states: "In any trial, in any court, the party accused shall be allowed to * * * meet the witnesses face to face."
 {¶ 86} In State v. Self (1990), 56 Ohio St.3d 73, 79, the Supreme Court of Ohio concluded that the Ohio Confrontation Clause "provides no greater right of confrontation" than the federal Confrontation Clause. In State v. Storch (1993), 66 Ohio St.3d 280, 291, however, the Supreme Court of Ohio stated that the admission of an out-of-court statement may violate the Ohio Confrontation Clause even though no federal confrontation violation exists. The court explained:
 * * * We construe the right to confrontation contained in Section 10, Article I to require live testimony where *Page 31 
reasonably possible. However, circumstances may exist where the evidence clearly indicates that a child may suffer significant emotional harm by being forced to testify in the actual presence of a person he or she is accusing of abuse. In such circumstances, the child may be considered unavailable for purposes of the Rules of Evidence and the out-of-court statements admitted without doing violence to Section 10, Article I * * *
Storch at 293. The court in Storch also stated that a trial court should hold a pre-trial hearing to determine whether a child can provide live testimony. Id. at 293-294.
 {¶ 87} In Edinger, we noted that Storch examined the admission of statements under Evid. R. 807. Edinger at ¶ 83-84. We recognized that the Supreme Court of Ohio's statement about the need for a pre-trial hearing on a child's ability to provide live testimony paralleled Evid. R. 807's "contemplat[ion] that a pretrial hearing will be conducted, at which time the ability of the child to testify should be addressed."Edinger at ¶ 83. We refused to extend Storch to cases, like this one, where out-of-court statements were properly admitted under Evid. R. 803(4). Edinger at ¶ 83-84. Pursuant to Edinger, we decline to applyStorch here.
 {¶ 88} In State v. Parsons, Franklin App. No. 06AP-410, 2007-Ohio-1204, ¶ 16, we cited Self approvingly for the proposition that the state and federal confrontation rights are equivalent. Pursuant toParsons and Self, we discern no violation here under the Ohio Confrontation Clause, given our conclusion that the admission of J.C.'s out-of-court statements from the February 2006 interview did not violate the federal Confrontation Clause.
 {¶ 89} Thus, we reject appellant's arguments against the admissibility of J.C.'s out-of-court statements in the February 2006 interview, and we conclude that former counsel was not ineffective for stipulating to the admission of J.C.'s statements into *Page 32 
evidence. Having rejected appellant's other ineffective assistance arguments, we conclude that the trial court did not err by denying appellant's ineffective assistance Crim. R. 33 motions. We overrule appellant's fourth assignment of error.
 {¶ 90} Appellant's sixth, seventh, and eighth assignments of error concern the trial court's acceptance of former counsel's stipulation to the admission of J.C.'s out-of-court statements. Specifically, appellant reiterates that the trial court needed to determine J.C.'s competency before it admitted the statements into evidence. Appellant also reiterates that the admission of the statements violated his confrontation rights under the federal and state constitutions.
 {¶ 91} Under the invited error doctrine, however, a party cannot claim that the trial court erred by accepting the party's stipulation.State v. Hodge, Franklin App. No. 04AP-294, 2004-Ohio-6980, ¶ 9. Regardless, we have already concluded that the trial court need not have determined J.C.'s competency before admitting J.C.'s February 2006 interview statements into evidence. We also have concluded that the admission of the statements did not violate appellant's confrontation rights under the federal and state constitutions. Accordingly, we overrule appellant's sixth, seventh, and eighth assignments of error.
 {¶ 92} In his ninth assignment of error, appellant argues that the trial court erred in neither discussing the polygraph stipulation with him on the record, nor determining whether he voluntarily, knowingly, and intelligently entered into the stipulation. In support, appellant cites State v. Russell, Van Wert App. No. 15-02-03, 2002-Ohio-3384, ¶ 22;State v. Counts, 170 Ohio App.3d 339, 2007-Ohio-117, ¶ 8; andState v. Tucker, Montgomery App. No. 22089, 2008-Ohio-2386, ¶ 32. *Page 33 
 {¶ 93} Appellant misconstrues these cases. In Tucker, the appellate court merely observed that the trial court spoke with a defendant to ensure that the defendant understood and agreed with the polygraph stipulation, and that the defendant realized that he entered into the stipulation against the advice of his counsel. Id. at ¶ 32. InCounts and Russell, the appellate courts simply observed that the trial courts had determined that the defendants entered into stipulations voluntarily. Counts at ¶ 8; Russell at ¶ 22. Nothing in these cases suggests that, before polygraph results are admissible pursuant to stipulation, the court must discuss the stipulation with the defendant on record and determine if the defendant entered the stipulation knowingly, voluntarily, and intelligently. More importantly, the Supreme Court of Ohio did not impose this procedure when it outlined what was necessary for the admissibility of polygraph results. Souel, syllabus. Under Souel, the parties, including the defendant, must sign a written stipulation providing for the admission of polygraph results. Id. Appellant signed a written stipulation here, and Souel did not require the trial court to undergo the additional procedures appellant urges. Therefore, we overrule appellant's ninth assignment of error.
 {¶ 94} In his tenth assignment of error, appellant argues that his prison sentence constitutes cruel and unusual punishment under the federal and state constitutions. We disagree.
 {¶ 95} Appellant was convicted of child rape under R.C. 2907.02(A)(1)(b). Statutes in effect when appellant raped J.C. required a life sentence because appellant raped a child less than ten years of age. See Sub. H.B. No. 485, 149 Laws of Ohio, Part IV, 8022-8023. The trial court imposed this required life sentence. *Page 34 
 {¶ 96} The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment, and the amendment applies to the states pursuant to the Fourteenth Amendment. See Robinson v.California (1962), 370 U.S. 660. We should grant substantial deference to the broad authority that legislatures possess in determining the types and limits of punishments for crimes. State v. Hairston,118 Ohio St.3d 289, 2008-Ohio-2338, ¶ 22. Thus, as a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment. Id. at ¶ 21.
 {¶ 97} Here, when the trial court sentenced appellant to life imprisonment, it did not exceed the punishment that applicable statutes prescribed. This factor negates appellant's Eighth Amendment claim. SeeHairston at ¶ 21-22.
 {¶ 98} Nonetheless, appellant argues that a life sentence cannot constitutionally apply to an R.C. 2907.02(A)(1)(b) child rape offense because the offense does not require proof of culpability. Strict liability eliminates the culpable mental state ("mens rea") in certain crimes, and strict liability applies to the age and sexual conduct elements of R.C. 2907.02(A)(1)(b). See Ferguson at ¶ 72-88. Appellant does not provide case law or argument to support his claim that a life sentence cannot constitutionally apply to R.C. 2907.02(A)(1)(b) due to the application of strict liability. Accordingly, under App. R. 12(A)(2), we need not address appellant's undeveloped claim. See State v.Easley, Franklin App. No. 07AP-578, 2008-Ohio-468, ¶ 52.
 {¶ 99} We further note that the constitutional prohibition against cruel and unusual punishment is limited to extreme sentences that are grossly disproportionate to *Page 35 
the crime. Hairston at ¶ 13. These sentences must be shocking to a reasonable person and to the community's sense of justice. Id. at ¶ 14.
 {¶ 100} Courts use a tripartite analysis to assess whether the penalty imposed is disproportionate to the offense committed:
 "First, we look to the gravity of the offense and the harshness of the penalty. * * * Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive. * * * Third, courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions." * * *
State v. Weitbrecht (1999), 86 Ohio St.3d 368, 371, quoting Solem v.Helm (1983), 463 U.S. 277, 290-291.
 {¶ 101} A reviewing court need not reach the second and third prongs of the tripartite test except in the rare case when a threshold comparison of the crime committed and the sentence imposed leads to an inference that the two are grossly disproportionate. Weitbrecht at 373, fn. 4, citing Harmelin v. Michigan (1991), 501 U.S. 957, 1005 (Kennedy, J., concurring); Silverman at ¶ 132.
 {¶ 102} Appellant argues that his life imprisonment sentence is grossly disproportionate to his rape crime. Ohio courts, however, have held that life imprisonment is not grossly disproportionate to R.C. 2907.02(A)(1)(b) offenses that involve victims under ten years of age. See State v. Simpson, Cuyahoga App. No. 88301, 2007-Ohio-4301, ¶ 100-104; State v. McConnell, Montgomery App. No. 19993, 2004-Ohio-4263, ¶ 139-142. *Page 36 
 {¶ 103} Appellant argues that his case is an exception because J.C. did not suffer any physical harm from the rapes. We disagree. The trial court had no discretion to except appellant from life imprisonment because the applicable sentencing laws mandated this sentence for all offenders who raped victims less than ten years of age. See Sub. H.B. No. 485, 149 Laws of Ohio, Part IV, 8022-8023. The legislature mandated the sentence to reflect the despicable act of raping young children. SeeState v. Ali, Cuyahoga App. No. 88147, 2007-Ohio-3776, ¶ 23. Courts recognize this in holding that life imprisonment is not grossly disproportionate to R.C. 2907.02(A)(1)(b) offenses that involve victims less than ten years of age. McConnell at ¶ 142; Simpson at ¶ 103.
 {¶ 104} Additionally, here, J.C. said that the rape hurt him, and Jacqueline testified that J.C. has experienced emotional and social problems. We reject appellant's claims to the contrary.
 {¶ 105} For all these reasons, we conclude that appellant's life imprisonment sentence is not cruel and unusual punishment under theEighth Amendment. The Cruel and Unusual Punishment Clause of Section 9, Article I of the Ohio Constitution sets out the same restrictions as theEighth Amendment. Hairston at ¶ 12. Therefore, we similarly conclude that appellant's life imprisonment sentence is not cruel and unusual punishment under the state constitution.
 {¶ 106} Lastly, in his tenth assignment of error, appellant argues that his rape conviction is invalid under State v. Colon,118 Ohio St.3d 26, 2008-Ohio-1624. This issue is separate from the cruel and unusual punishment issue that appellant allocates to this assignment. Thus, theColon issue is not properly posed to us through a *Page 37 
separate assignment of error, and we need not address the issue. See App. R. 12(A)(2); State v. Jordan, Franklin App. No. 05AP-1330,2006-Ohio-5208, ¶ 45.
 {¶ 107} Regardless, we reject appellant's Colon argument. InColon, the Supreme Court of Ohio held that a defendant convicted for robbery in violation of R.C. 2911.02(A)(2) could raise for the first time on appeal the issue of the indictment being defective for failing to charge the requisite mens rea of recklessness. Colon at ¶ 1, 19. The court concluded that structural error, and not plain error, applied because the defect in the indictment led to significant errors throughout the defendant's trial. Colon at ¶ 23. The court reversed the defendant's conviction upon finding structural error in the defendant's indictment. Id. at ¶ 32, 45. The court recognized that the existence of "`structural error mandates a finding of "per se prejudice." `"(Emphasis omitted.) Id. at ¶ 20, quoting State v. Fisher, 99 Ohio St.3d 127,2003-Ohio-2761, ¶ 9.
 {¶ 108} Appellant's Colon argument applies to the age and sexual conduct elements of child rape under R.C. 2907.02(A)(1)(b).Ferguson at ¶ 73-75, 88. The indictment against appellant does not specify a mens rea applicable to these elements. Nevertheless, strict liability applies to these elements, and an indictment is not defective for failing to specify that strict liability applies. Id. Accordingly, we need not reverse appellant's R.C. 2907.02(A)(1)(b) conviction underColon. Having also rejected appellant's arguments that his sentence is cruel and unusual under the federal and state constitutions, we overrule appellant's tenth assignment of error.
 {¶ 109} In his eleventh assignment of error, appellant argues that his Tier III sex offender classification is unconstitutional. We disagree. *Page 38 
 {¶ 110} At the March 20, 2008 sentencing hearing, the trial court classified appellant a Tier III sex offender under the Adam Walsh Act, implemented under S.B. No. 10 ("S.B. 10"). S.B. 10 abolished prior sex offender classifications in former R.C. Chapter 2950. State v.Williams, Warren App. No. CA2008-02-029, 2008-Ohio-6195, ¶ 15. Designations like "`sexual predator'" no longer exist, nor do sex offender hearings under the former law. Williams at ¶ 15. Now, under S.B. 10, an offender who commits a sex offense is classified either a sex offender or a child-victim offender. Williams at ¶ 16. Depending on the sex offense committed, the offender is placed in Tier I, Tier II or Tier III. Id. Trial courts no longer have discretion in imposing a certain classification on offenders, and an offender's likelihood to reoffend is no longer considered. Id. Rather, offenders are now classified solely on the offense for which they were convicted. Id. As an exception, offenders are automatically placed in a higher tier if (1) they have a prior conviction for a sexually-oriented or child-victim-oriented offense, or (2) they have been previously classified as sexual predators. Id.
 {¶ 111} Each tier under S.B. 10 has registration requirements, but they differ in terms of the duration of the duty and the frequency of the in-person address verification. Id. at ¶ 18. Appellant is a Tier III offender because rape is a Tier III offense. R.C. 2950.01(G)(1)(a). Tier III offenders are required to register for life and to verify their addresses every 90 days; community notification may occur every 90 days for life. Williams at ¶ 18.
 {¶ 112} Statutes enjoy a strong presumption of constitutionality.State v. Cook (1998), 83 Ohio St.3d 404, 409. "`An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear *Page 39 
beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.'" Id., quoting State ex rel.Dickman v. Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus.
 {¶ 113} In arguing against the constitutionality of S.B. 10, appellant first claims that the law is punitive because it attaches classifications directly and solely to the crime of conviction. Ohio courts, however, have concluded that S.B. 10 is not punitive.Williams at ¶ 75, 111; State v. Swank, Lake App. No. 2008-L-019,2008-Ohio-6059, ¶ 88-89; State v. Desbiens, Montgomery App. No. 22489,2008-Ohio-3375, ¶ 30; State v. Longpre, Ross App. No. 08CA3017,2008-Ohio-3832, ¶ 14-15; State v. Holloman-Cross, Cuyahoga App. No. 90351, 2008-Ohio-2189, ¶ 19-20. With S.B. 10, the legislature established a civil regulatory scheme for sex offenders, and the regulatory scheme serves the remedial purpose of protecting the public.Williams at ¶ 74. By tying an offender's classification to the offense committed, rather than to an individual assessment, the legislature adopted an alternative approach to the regulation and categorization of sex offenders. Williams at ¶ 71. "The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment.'" Longpre at ¶ 14, quoting Smith v. Doe (2003),358 U.S. 84, 104. But even if we were to conclude that S.B. 10 is punitive, appellant does not explain why this conclusion would lead us to conclude that the law is unconstitutional. He does not, for example, present an Ex Post Facto challenge. See Williams at ¶ 37-94.
 {¶ 114} Next, appellant argues that S.B. 10 violates the separation of powers doctrine. The separation of powers doctrine is embedded in Ohio's constitutional *Page 40 
framework. State ex rel. Ohio Academy of Trial Lawyers v. Sheward,86 Ohio St.3d 451, 475, 1999-Ohio-123. Each branch of government must be protected from encroachment from the others so that the integrity and independence of each branch is preserved. Id. A statute that violates the separation of powers doctrine is unconstitutional. Id.
 {¶ 115} Here, appellant first argues that S.B. 10 violates the separation of powers doctrine by interfering with a prior judicial adjudication regarding appellant's sex offender status. However, there is no prior judicial adjudication. At the March 2008 sentencing hearing, the trial court used S.B. 10 to designate a sex offender classification on appellant. This was appellant's initial designation, and the trial court did not previously designate appellant under the former sex offender classification laws.
 {¶ 116} Appellant also argues that S.B. 10 divests the judiciary of its authority by directing a court to place an offender in a specific tier based on the crime committed. The classification of sex offenders has always been a legislative mandate, however, not an inherent power of the courts. Williams at ¶ 99. Without legislative creation of sex offender classifications, no classification would be warranted. Id. Because sex offender classification is a creation of the legislature, the legislature may properly expand or limit the power to classify. Id. Therefore, S.B. 10 does not violate the separation of powers doctrine. Id. at ¶ 97, 102.
 {¶ 117} Lastly, appellant argues that S.B. 10 violates his constitutional due process rights because the law, under R.C. 2950.034, bars sex offenders from residing within 1,000 feet of a school, preschool or child day-care center. This issue is not ripe for review because appellant is incarcerated. See Williams at ¶ 91-93; State v.Randlett, *Page 41 
Ross App. No. 08CA3046, 2009-Ohio-112, ¶ 29-33; State v. Duncan, Henry App. No. 7-08-03, 2008-Ohio-5830, ¶ 5. Appellant lacks standing to raise constitutional challenges to S.B. 10's residency restrictions, and we need not consider them. Williams at ¶ 92; Randlett at ¶ 31-33;Duncan at ¶ 5.
 {¶ 118} For all these reasons, we reject appellant's assertion that his Tier III sex offender classification is unconstitutional. We overrule appellant's eleventh assignment of error.
 {¶ 119} In summary, we overrule appellant's eleven assignments of error. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
KLATT and TYACK, JJ., concur. *Page 1