[Cite as *State v. Stoffer*, 2011-Ohio-5133.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 09-CO-1 |
| | ) | |
| MICHAEL STOFFER, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from Court of Common Pleas of Columbiana County, Ohio Case No. 08CR250

JUDGMENT:    Affirmed

APPEARANCES:
For Plaintiff-Appellee    Robert Herron
Prosecuting Attorney
Timothy McNicol
Kyde L. Kelly
Assistant Prosecuting Attorneys
105 South Market Street
Lisbon, Ohio 44432

For Defendant-Appellant    Attorney Douglas A. King
91 West Taggart Street
P.O. Box 85
East Palestine, Ohio 44413

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: September 30, 2011

DONOFRIO, J.

{¶1} Defendant-appellant Michael Stoffer appeals his jury-trial conviction and fifteen-year prison sentence for two counts of gross sexual imposition and three counts of illegal use of a minor in nudity-oriented material or performance.

{¶2} Tom and Sue, who have been married 38 years and have five adult children and fourteen grandchildren, live in Leetonia, Ohio.[1] (Tr. 353, 369, 386.) One of their adult children, a son, and his wife have three children – T.P. (12 y.o.a.), A.P. (7 y.o.a.), and B.P. (6 y.o.a.).[2] (Tr. 353, 386.) The children's parents became involved in "street" drugs and Tom and Sue took legal and physical custody (by agreement) of those three grandchildren in 2002. (Tr. 353-354.) Sue does not work outside the home, but cares for the children on a daily basis. (Tr. 371.)

{¶3} In 2007, Tom's friend, Stoffer, came to them in need of a place to stay following an accident and injury. (Tr. 354.) Tom had been friends with Stoffer since grade school. (Tr. 386.) They rented a bedroom in their home to him for $75 a month. (Tr. 355.)

{¶4} Stoffer was not working, but received VA benefits. (Tr. 387-388.) Stoffer regularly took part in family gatherings and spent a lot of time with the grandchildren, and was generally treated as part of the family. (Tr. 349, 372, 376-377, 403, 474-476.) A.P. and B.P. would spend time with Stoffer in his room. (Tr. 361-362, 372.) Stoffer kept a computer and digital camera in the room. (Tr. 360, 393, 476.) He would let them play games on his computer and allowed A.P. to use the camera. A guitar which A.P.'s father had given her for her birthday was kept on a shelf in the closet in his room out of her reach. (Tr. 365-366, 453.)

{¶5} Another of Tom and Sue's five children, Karen, lives in her own home directly behind her parents. (Tr. 342.) She has two children of her own, two young boys – a 4-year-old and a 5-year-old. (Tr. 343.) Since they were next door neighbors, Karen's children would often play with T.P., A.P., and B.P. (Tr. 343.)

---

1. Tom and Sue's last name has been withheld to protect the identity of the child victim in this case.
2. The children's stated ages were their ages at the time of trial.

Karen and her children would spend time in her parents' house and in turn, Karen would occasionally watch all of the children at her house when her mother went out to the store or on errands. (Tr. 343, 346.)

**{¶6}** On July 2, 2008, the kids had been playing outside and then went into Karen's house to watch cartoons. (Tr. 343.) As she was in the kitchen doing dishes, Karen overheard the children's conversation. (Tr. 343.) A.P. asked Karen's 5-year-old boy to take his shirt off and then asked him to take his pants off. (Tr. 344.) She then giggled and told him she was just kidding. (Tr. 344.) When Karen asked A.P. why she had asked the 5-year-old to take his pants off, she replied that she was only kidding. (Tr. 344.) At that point, B.P. spoke up and said he had seen Stoffer and A.P. kissing. (Tr. 344-345.) When Sue returned from the store, Karen told Sue that she needed to have a talk with A.P. (Tr. 345.)

**{¶7}** After talking with A.P., Sue had serious concerns about what had occurred between A.P. and Stoffer and phoned Tom at work to relay those concerns to him. (Tr. 356-357, 389.) Tom left work early and returned home. (Tr. 389.) Tom confronted Stoffer and told him he had heard that he was "messing" with his granddaughter. (Tr. 390.) Stoffer responded that he would never do anything like that. (Tr. 390.) Tom then brought A.P. to Stoffer and had her recite the allegations to him. (Tr. 391.) He again denied the allegations, but then indicated that he might have pulled her pants down but forgot and that he had picked her up by her feet and her underwear had fallen off. (Tr. 391.)

**{¶8}** Sue went to the Columbiana County Department of Job and Family Services on July 7, 2008, to report what had occurred. (Tr. 315.) Laurie Jones, an investigator with that department, went to Tom and Sue's home the following day to assess the safety of the children. (Tr. 315-316.) Since Tom and Sue had asked Stoffer to leave the home and believed A.P.'s story, Jones determined that A.P. was safe. (Tr. 316.)

**{¶9}** Jones returned to Tom and Sue's home on July 18, 2008 for a follow-up visit. (Tr. 316.) This time, she was accompanied by Dan Valentine, a part-time

constable for the Salem Township Police Department. (Tr. 316.) Jones interviewed T.P. and B.P. (Tr. 316.) Valentine interviewed and took statements from Sue and Karen. (Tr. 226.) A.P. was not formally interviewed and was instead scheduled to be seen at Tri-County Advocacy Center in Youngstown, Ohio. (Tr. 243, 316-317.) The center is a medical clinic in which children who are suspected of being abused are medically evaluated. (Tr. 243.)

{¶10} A.P. was evaluated at the center on July 22, 2008 by Dr. Paul McPherson. (Tr. 245.) After he obtained her medical history, A.P. was then interviewed by the center's social worker, Diana Russo. (Tr. 346.) Dr. McPherson and Laurie Jones observed the interview as it took place via closed circuit television. (Tr. 246, 251, 317.) During the interview, A.P. disclosed that Stoffer had kissed her "boobies." (Tr. 249.) She also said that Stoffer touched her "private area" and that it hurt after she "peed." (Tr. 249.) She also explained the Stoffer put her hand on his "private part" over his clothes and that Stoffer got on top of her and moved up and down on her with his clothes on. (Tr. 250.) For the first time, she also revealed that Stoffer had taken pictures of her "boobies" and "private spot." (Tr. 250.)

{¶11} Valentine subsequently located Stoffer at a motel in North Lima. North Lima is located in Beaver Township, Mahoning County, Ohio, where Valentine is also a full-time police officer with the rank of corporal. (Tr.223.) Valentine obtained a search warrant for Stoffer's room in hopes of locating his computer and digital camera. (Tr. 228.) Valentine, along with other members of the Beaver Township Police Department and Laurie Jones, executed the warrant on July 25, 2008. (11/07/2008 Suppression Hearing Tr. 8, Trial Tr. 228.) When it was apparent that there were very few personal items of Stoffer's found in the room or his vehicle, Stoffer was asked where his belongings were and he indicated that they were in a storage unit. (Tr. 232.) Stoffer gave the police consent to search the unit and they recovered the camera they were looking for. (Tr. 232-233.)

{¶12} Valentine forwarded the camera to the Ohio Bureau of Criminal Identification and Investigation. (Tr. 234.) There, forensic specialist Joann Gibb was

able to view numerous pictures which had been deleted from the camera. (Tr. 274.) Three of these pictures showed A.P. in various stages of nudity in Stoffer's room at Tom and Sue's house. (Tr. 237-238, 275.)

{¶13} On August 20, 2008, a Columbiana County grand jury indicted Stoffer on two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), third-degree felonies, and three counts of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(1), second-degree felonies. Stoffer pleaded not guilty, the court appointed him counsel, and the case proceeded to discovery and other pretrial matters.

{¶14} One of those pretrial matters which is relevant in this appeal is a motion to suppress filed by Stoffer on October 31, 2008. Stoffer argued that no search warrant had been provided in discovery and that if a search warrant was issued there was no probable cause to justify its issuance. He also argued that no consent to search form had been provided in discovery and that if there was one, his consent was not validly obtained.

{¶15} The trial court held a hearing on the motion on November 7, 2008. The state presented the testimony of Valentine who testified about the execution of the search warrant and Stoffer's consent to search the storage unit and subsequent consent to search the memory of the computer and digital camera that were seized.

{¶16} On November 10, 2008, the trial court denied Stoffer's motion to suppress. The court reasoned that Stoffer was cooperative and voluntarily signed both consent forms and voluntarily led the police officers to the camera and admitted that the camera was his. The court found that there was no evidence of revocation of any consents or any coercion or threats employed to get Stoffer to sign the consent forms or to make the admissions that he did.

{¶17} On November 25, 2008, a Columbiana County grand jury returned a superseding indictment charging Stoffer with the same offenses as before but adding the mental state of purposely to the two counts of gross sexual imposition and adding

the mental state of recklessly to the three counts of illegal use of a minor in nudity-oriented material or performance.

{¶18} The case proceeded to a jury trial on December 8, 2008. After initial instructions, a jury view of Tom and Sue's home was conducted, in particular the room Stoffer rented while he was there and where the pictures that formed the basis of the illegal use of a minor in nudity-oriented material or performance counts were taken. The state presented the testimony of those who investigated the case: Laurie Jones, the investigator with the Columbiana County Department of Job and Family Service who first interviewed A.P.'s family and who witnessed the formal interview at the Tri-County Advocacy group; Dan Valentine, the part-time constable of Salem Township where the crimes occurred and a full-time police officer in Beaver Township where Stoffer was located and where the digital camera was recovered which yielded the pictures that formed the basis of the illegal use of a minor in nudity-oriented material or performance counts; Dr. Paul McPherson, who evaluated A.P. at the Tri-County Advocacy Center; and Joann Gibb, the forensic specialist with the Ohio Bureau of Criminal Identification and Investigation that recovered the illicit pictures from Stoffer's digital camera. The state also presented the testimony of A.P. and her family, including her grandparents, Tom and Sue, her aunt Karen, and her brother, B.P. Various pictures including the three nude pictures taken of A.P. were admitted as evidence. Stoffer testified in his own defense. He described how A.P.'s pants may have fell down while playing, explained that he only gave the children "goodnight" kisses, and denied rubbing up against A.P. or taking nude pictures of her.

{¶19} On December 9, 2008, the jury returned verdicts of guilty on all five counts contained in the indictment. On December 17, 2008, the trial court sentenced Stoffer to five years in prison on each of the gross sexual imposition counts to be served consecutively to each other and five years in prison on each of the illegal use of a minor in nudity-oriented material or performance counts to be served concurrently with each other but consecutively with the sentence for the gross sexual

imposition counts for an aggregate sentence of fifteen years. The trial court also designated Stoffer a Tier II Sex Offender/Child Victim Offender pursuant to R.C. Chapter 2950, and was advised of his duty to register under the statute. This appeal followed.

{¶20} Stoffer raises fifteen assignments of error. Stoffer's first assignment of error states:

{¶21} "THE TRIAL COURT ERRED IN DENYING THE DEFENDANT/APPELLANT'S MOTION TO SUPPRESS EVIDENCE[.]"

{¶22} Stoffer contends that when the police officers executed the search warrant at his hotel room he was placed in handcuffs. When they were unable to locate the digital camera they were looking for and questioned him about its location, he revealed that it was in a storage unit. Stoffer characterizes the encounter as a custodial interrogation. Since the police did not read him his *Miranda* rights, he argues that his revelation about the location of the digital camera and the pictures recovered from it are physical evidence obtained as a result of unwarned statements and, thus, are inadmissible.

{¶23} In response, the state points out that in his motion to suppress and at the hearing on the motion Stoffer never challenged the evidence on the basis of the police officer's failure to read him his *Miranda* rights. The state contends the hearing was confined to whether there was an unreasonable search and seizure (i.e. warrantless) and whether there was valid consent given by Stoffer.

{¶24} This court has observed that a defendant's failure to raise an issue in a motion to suppress constitutes a waiver of that issue on appeal. *State v. Roskovich*, 7th Dist. No. 04 BE 37, 2005-Ohio-2719, ¶13, citing *State v. Peagler* (1996)*,* 76 Ohio St.3d 496, 500, 668 N.E.2d 489. A review of Stoffer's motion to suppress reveals that the *Miranda* issue was not raised in the motion. The motion set forth only two specific grounds. The first was that the state had failed to produce a search warrant in discovery and that there was no probable cause to justify the search. The second was that no valid consent to search was given by Stoffer. At the hearing on the

motion, the only person to testify was Officer Dan Valentine. During his testimony, the state provided Stoffer's attorney with a copy of the search warrant and a copy of the consent to search form. Stoffer's attorney's cross-examination of Valentine simply focused on who was present when the warrant and consent to search were presented to Stoffer and whether the consent-to-search form was explained to him. Since Stoffer never raised the *Miranda* issue below either in his motion or at the hearing on the motion, he waived that issue on appeal.

**{¶25}** We are left only to examine the propriety of the trial court's decision based on the two grounds that were presented to it in Stoffer's suppression motion. The standard of review in an appeal of a suppression issue is two-fold. *State v. Dabney*, 7th Dist. No. 02BE31, 2003-Ohio-5141, at ¶9, citing *State v. Lloyd* (1998), 126 Ohio App.3d 95, 100-101, 709 N.E.2d 913. Since the trial court is in the best position to evaluate witness credibility, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing *State v. Winand* (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9, citing *Tallmadge v. McCoy* (1994), 96 Ohio App.3d 604, 608, 645 N.E.2d 802. However, once an appellate court has accepted those facts as true, the court must independently determine as a matter of law whether the trial court met the applicable legal standard. Id., citing *State v. Clayton* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906. This determination is a question of law of which an appellate court cannot give deference to the trial court's conclusion. Id., citing *Lloyd*.

**{¶26}** The first ground set forth in Stoffer's suppression motion was that the state had failed to produce a search warrant in discovery and that there was no probable cause to justify the search. At the suppression hearing, the prosecutor provided Stoffer's defense counsel with a copy of the search warrant. In addition, Officer Valentine testified that Stoffer was present at the motel when they went to execute the warrant and that Stoffer was given a copy of the search warrant at that time. (11/07/2008 Suppression Hearing Tr. 9-10, 17.) Moreover, the only incriminating physical evidence there was in this case was Stoffer's digital camera

and the images retrieved from it. The search warrant was limited to Stoffer's motel room and his vehicle. The digital camera was not retrieved from either of those locations, but from a storage unit Stoffer had rented nearby. Since there was a signed written consent by Stoffer to search that unit, the underlying probable cause for the search warrant, which did not yield any incriminating evidence, was irrelevant.

**{¶27}** That brings us to the second ground set forth in the suppression motion which was that no valid consent to search was given by Stoffer. Again, Officer Valentine was the only person to testify at the suppression hearing. Stoffer did not testify. Officer Valentine testified that Stoffer executed a written consent to search the storage unit where the digital camera was located. (11/07/2008 Suppression Hearing Tr. 11-12.) Stoffer opened the storage unit himself, was present the entire time the officers searched it, and at no time revoked his consent. (11/07/2008 Suppression Hearing Tr. 11-12.) Based on the evidence presented, we agree with the trial court's conclusion that Stoffer gave valid consent to police to search the storage unit.

**{¶28}** Based on the foregoing and limited to the two grounds raised by Stoffer's suppression motion, the trial court did not err in overruling the motion.

**{¶29}** Accordingly, Stoffer's first assignment of error is without merit.

**{¶30}** Stoffer's second assignment of error states:

**{¶31}** "THE TRIAL COURT ERRED IN FINDING [B.P.] COMPETENT TO TESTIFY AND IN FINDING [A.P.] COMPETENT TO TESTIFY."

**{¶32}** Stoffer contends that pursuant to Evid.R. 601(A) a child witness under the age of ten is not competent to testify if they appear incapable of receiving or relating facts properly. Stoffer points out that A.P.'s brother, B.P., who was six years old when he testified at the November 26, 2008 voir dire on the issue of competence, incorrectly stated that the next day would be Christmas. Stoffer states that B.P. also testified that he did not know his address, his birthday, his grandmother's name, what school he attended, what grade he was in, what grade he was in the previous year,

and what house he lived in the previous year. Stoffer also points out that B.P. described trips to the county fair and to a park as his vacation.

{¶33} As for A.P., Stoffer contends her age at the time of voir dire was never established and that she did not know her own birthday or the name of her teacher from the previous year.

{¶34} In response, the state maintains that the trial court properly determined through the questioning of the children that they were capable of receiving just and truthful impressions of facts and events and that they were able to accurately relate them. Nevertheless, the state argues that since Stoffer never objected to the introduction of the children's testimony any error arising therefrom does not rise to the level of plain error.

{¶35} Since Stoffer failed to object to the trial court's competency determination or the introduction of the children's testimony at trial, this court reviews this issue only for plain error. Crim.R. 52(B); *In re Williams* (1997), 116 Ohio App.3d 237, 241, 687 N.E.2d 507. To prevail on a claim governed by the plain error standard, an appellant must demonstrate that the trial outcome would have been clearly different but for the alleged errors. *State v. Waddell* (1996), 75 Ohio St.3d 163, 166, 661 N.E.2d 1043.

{¶36} Generally, an appellate court reviews a trial court's determination of whether a child is competent to testify for an abuse of discretion. *State v. Frazier* (1991), 61 Ohio St.3d 247, 251, 574 N.E.2d 483. This is because the court has the opportunity to observe the child's appearance, manner of responding to questions, demeanor, and any indicia of ability to relate facts accurately and truthfully. Id. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *State v. Clark* (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331.

{¶37} Evid.R. 601(A) provides that "[e]very person is competent to be a witness except: (A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions

respecting which they are examined, or of relating them truly." Thus, the trial court must make a determination of whether a child under ten is competent to testify. When making this determination the court must consider:

**{¶38}** "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or her responsibility to be truthful." *Frazier*, 61 Ohio St.3d at 251, 574 N.E.2d 483.

**{¶39}** Commenting on the *Frazier* considerations, the Ohio Supreme Court later stated:

**{¶40}** "Those characteristics can be broken down into three elements. First, the individual must have the ability to receive accurate impressions of fact. Second, the individual must be able to accurately recollect those impressions. Third, the individual must be able to relate those impressions truthfully." *State v. Said* (1994), 71 Ohio St.3d 473, 476, 644 N.E.2d 337.

**{¶41}** In this case, although the children could not relay certain details about their lives, they still demonstrated that they were competent to testify. As for B.P., he indicated that he knew that telling the truth was a rule of court. (Tr. 10.) He understood that breaking a rule had consequences. (Tr. 10.) For example, he stated that if he broke a rule at home he would be spanked. (Tr. 10.) He also demonstrated that he understood what telling the truth meant. (Tr. 12.) Although he was unsure of what holiday was the next day (Thanksgiving), he knew that saying the female court reporter was a boy was not the truth. (Tr. 11-12.) He was able to tell the court that his favorite television program was Sponge Bob and that saying Sponge Bob (who is a boy) was a girl was not the truth. (Tr. 12.) He knew that he lived in Leetonia and that he lived with "Grandma." (Tr. 13.) He knew his sister's name and her age. (Tr. 14.) Although he could not relate his exact birthdate, he was able to recall his favorite present that he got for his birthday the previous year. (Tr. 14.) He was able

to tell the court his favorite present that he received the previous Christmas. (Tr. 15.) He was able to relate his teachers' names from the previous year and the current year, as well as what grade he was in. (Tr. 16-17.) B.P.'s answers established that he could not only accurately receive and recollect impressions of fact, but that he could also relate those impressions truthfully.

{¶42} As for A.P., she also stated that she understood the need to tell the truth in court. (Tr. 23.) As with B.P., she related that the consequences of not telling the truth at home resulted in being spanked. (Tr. 23.) She stated that she understood that the judge could put her in jail for not telling the truth in court. (Tr. 24.) She understood that saying she was a boy or that the male assistant prosecutor was a girl were examples of not being truthful. (Tr. 23.) She was able to relate what grade she was in and the name of her teacher. (Tr. 24.) Like B.P., she was able to recall her favorite presents from last Christmas and her last birthday. (Tr. 26-27.) A.P.'s answers reflected that she too could accurately receive and recollect impressions of fact, and relate those impressions truthfully.

{¶43} Accordingly, Stoffer's second assignment of error is without merit.

{¶44} Stoffer's third assignment of error states:

{¶45} "THE TRIAL COURT ERRED IN FAILING TO SEVER THE FIVE (5) COUNTS OF THE SUPERCEDING [sic] INDICTMENT FOR PURPOSES OF TRIAL."

{¶46} Stoffer argues that the trial court abused its discretion in joining the counts for trial, contending that the factual situation of each crime was identical and not easily capable of segregation. Stoffer also notes that the crimes involved the same victim, factual situations, and witnesses. Stoffer argues that prejudice in joining the counts was demonstrated by the assistant prosecutor suggesting to the jury in his opening statement that they should believe the two counts of gross sexual imposition because of the three pictures which gave rise to the three counts of illegal use of a minor in nudity-oriented material or performance.

{¶47} In response, the state argues that Stoffer waived this alleged error because he did not request severance below in the trial court.

{¶48} Stoffer failed to move for separate trials after the grand jury issued the superseding indictment. As mentioned before, an appellant's failure to raise an error in the trial court constitutes a waiver of that issue on appeal unless it rises to the level of plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 13, 444 N.E.2d 1332. Thus, this court reviews the trial court's failure to grant separate trials for plain error.

{¶49} Crim.R. 8(A) provides that two or more offenses may be charged in the same indictment if the offenses are (1) of the same or similar character, or (2) are based on the same act or transaction, or (3) are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or (4) are part of a course of criminal conduct.

{¶50} The law favors joining multiple criminal offenses in a single trial under Crim.R. 8(A). *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293, 298. Two or more offenses can be joined if they are of the same or similar character. *State v. Torres* (1981), 66 Ohio St.2d 340, 343, 20 O.O.3d 313, 314-315, 421 N.E.2d 1288, 1290.

{¶51} In this case, all of the offenses charged in Stoffer's indictment were of the same or similar character. The offenses charged were gross sexual imposition and illegal use of a minor in nudity-oriented material or performance. Thus, it was proper to join all of the offenses in one indictment.

{¶52} Crim.R. 14 provides that if it appears that a defendant is prejudiced by a joinder of offenses in an indictment for trial, the court shall order an election or separate trial of counts or provide such other relief as justice requires.

{¶53} If a defendant claims the court erred in refusing to allow separate trials of multiple charges, he has the burden of affirmatively showing that his rights were prejudiced. *State v. Torres* (1981), 66 Ohio St.2d 340, 343, 421 N.E.2d 1288. "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if

the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *State v. Schaim* (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661.

**{¶54}** In this case, the evidence of each crime was simple and distinct. The three photographs were each taken within seconds of each other as evidenced by the time stamp on each photograph. A.P. testified that Stoffer had touched her breasts and vagina, and that he had also taken pictures of those areas. Under these circumstances, the trial court did not err in joining the five counts for trial. Nor is it apparent that the outcome of the trial would clearly have been otherwise.

**{¶55}** Accordingly, Stoffer's third assignment of error is without merit.

**{¶56}** Stoffer's fourth assignment of error states:

**{¶57}** "THE TRIAL COURT ERRED WHEN IT ADMITTED INADMISSIBLE HEARSAY TESTIMONY OF DR. MCPHERSON."

**{¶58}** Dr. Paul McPherson evaluated A.P. at the Tri-County Advocacy Center. After Dr. McPherson conducted a physical examination of A.P., Diane Russo, a social worker, interviewed A.P. in another room. Although not in the room where A.P. was interviewed, Dr. McPherson watched the interview live via closed circuit television. At trial, the court permitted Dr. McPherson, over objection, to testify about what A.P. told Russo. Dr. McPherson testified that A.P. told Russo that Stoffer had kissed her breasts, touched her private area which resulted in pain when she urinated, and that he went up and down while lying on top of her.

**{¶59}** Stoffer argues the Dr. McPherson's testimony constituted hearsay and that the trial court erred in allowing its admission. Stoffer contends that the only possible hearsay exception would be Evid.R. 803(4), concerning statements for purposes of medical diagnosis or treatment. However, Stoffer argues that the exception does not apply here because Dr. McPherson was not in the room, removing the guarantee of trustworthiness upon which the exception is based.

**{¶60}** In response, the state argues that the statements made by A.P. and testified to by Dr. McPherson were made for purposes of medical treatment and, therefore, fall within the hearsay exception set forth in Evid.R. 803(4).

**{¶61}** Evid.R. 803 provides certain exceptions to the hearsay rule. Evid.R. 803(4) provides:

**{¶62}** "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

**{¶63}** "* * *

**{¶64}** "(4) *Statements for Purposes of Medical Diagnosis or Treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

**{¶65}** When a child sex abuse victim is taken to an advocacy center, it is not uncommon for the child to be subject to a physical exam by a doctor separate from an interview conducted by a social worker. Nor is it uncommon for a doctor or others to view the interview via closed circuit television and then testify about what they heard during the interview at trial. Despite the contents of the interview constituting hearsay, the testimony is admissible under the hearsay exception set forth in Evid.R. 803(4) as long as the interview was conducted for the purpose of medical diagnosis or treatment. *State v. Griffith*, 11th Dist. No. 2001-T-0136, 2003-Ohio-6980, ¶52-82. See, also, *State v. Gilfillan,* 10th Dist. No. 08AP-317, 2009-Ohio-1104, ¶74-79; *State v. Arnold,* 10th Dist. No. 07AP-789, 2008-Ohio-3471, ¶ 35-39; *Ferguson* at ¶34-42; *State v. D.H.,* 10th Dist. No. 07AP-73, 2007-Ohio-5970, ¶38-48; *State v. Jordan,* 10th Dist. No. 06AP-96, 2006-Ohio-6224, ¶ 17-21; *State v. Edinger,* 10th Dist. No. 05AP-31, 2006-Ohio-1527, ¶53-64.

**{¶66}** Moreover, the Ohio Supreme Court has held that "[s]tatements made to interviewers at child-advocacy centers that are made for medical diagnosis and treatment are *nontestimonial* and are admissible without offending the Confrontation Clause." (Emphasis added.) *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, paragraph two of the syllabus.

**{¶67}** In this case, Dr. McPherson testified as follows:

{¶68} "Q.     Now is part of your job at the Tri-County Children's Advocacy Center to diagnose and treat victims of abuse?

{¶69} "A.     Yes.  That's our main clinical responsibility there.

{¶70} "Q.     And in order to achieve that responsibility is it important to obtain an accurate history from the patient?

{¶71} "A.     Yes, that is one of the big aspects of making a diagnosis of child sexual abuse, is the history that the child provides.

{¶72} "We also talk to the parents, or the non-offending caregiver, about any other medical conditions they may have that may confuse us.

{¶73} "We also do a physical exam on the child.  And then afterwards we recommend testing for sexually transmitted diseases, if we need to.  And then typically recommend therapy.

{¶74} "Q.     Now did you see [A.P.] yourself, personally?

{¶75} "A.     Yes.  I examined [A.P.] personally.

{¶76} "Q.     Do you also take a history, or are you present when a history is obtained?

{¶77} "A.     Yes, we take essentially two histories.  I first talk to the caregiver that brought the child in, and ask them basic medical history questions; medications they're on.  Are they allergic to any medications?  Have they injured their private parts previously, that required a visit to the doctor or hospital?

{¶78} "And then afterwards, the child herself was interviewed by Diane Russo, our social worker.  During that interview I actually observe that in real time in a different room, but via closed circuit television.

{¶79} "Q.     And do you use all of that information then to properly examine and diagnose the patient?

{¶80} "A.     Yes.  Obtaining a history from the child is critical so we know what kind of exam we need to do, so, we know what kind of labs or test studies that we need to do, as well.  And then again, for mental health and therapy counseling,

we need all of that information to make a diagnosis and proper management." (Tr. 245-246.)

**{¶81}** As the aforementioned testimony reveals, the statements A.P. made at the Tri-County Advocacy Center, including those to Russo and observed in real time by Dr. McPherson via closed circuit television, were made for purposes of medical diagnosis or treatment.

**{¶82}** Accordingly, Stoffer's fourth assignment of error is without merit.

**{¶83}** Stoffer's fifth assignment of error states:

**{¶84}** "THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION IN LIMINE AS FILED ON DECEMBER 9, 2008, PREVENTING THE DEFENDANT/APPELLANT FROM CALLING WITNESS KEMATS TO TESTIFY AS TO [A.P.'S] PRIOR ALLEGATIONS OF SEXUAL ABUSE."

**{¶85}** Stoffer proffered the testimony of Jamie Kemats, a guidance counselor at A.P.'s school. She testified that in January 2008 A.P.'s brother B.P. had reported that another student touched A.P. in gym class. Kemats interviewed A.P. about the incident and confirmed B.P.'s report. The police were summoned and Kemats later learned from the principal that the five-year-old offender admitted to the incident and was removed from the school.

**{¶86}** Because the incident was of the same nature and occurred around the same time as the crimes charged in the superseding indictment, Stoffer argued that the jury should know about it. The trial court determined that since the incident actually did occur, it fell within the rape shield statute and could not go before the jury.

**{¶87}** Ohio's rape shield provision provides:

**{¶88}** "Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a

fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value." R.C. 2907.05(E).

**{¶89}** It is a well recognized constitutional principle that "(t)he rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers v. Mississippi* (1973), 410 U.S. 284, 294-95, 93 S.Ct. 1038, 35 L.Ed.2d 297.

**{¶90}** Several legitimate state interests are advanced by the shield law: (1) guarding the complainant's sexual privacy and protecting them from undue harassment; (2) discouraging the tendency in rape cases to try the victim rather than the defendant; (3) encouraging the reporting of rape, thus aiding crime prevention; (4) and aiding the truth-finding process by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative. *State v. Gardner* (1997), 59 Ohio St.2d 14, 17-18, 391 N.E.2d 337.

**{¶91}** In determining whether the rape shield law has been unconstitutionally applied in any particular instance, the court must thus balance the state interest which the statute is designed to protect against the probative value of the excluded evidence. *State v. Gardner* (1997), 59 Ohio St.2d 14, 17, 391 N.E.2d 337.

**{¶92}** Stoffer argues that the application of the rape shield law in his case infringed on his ability to present a defense. Stoffer relies on *In re Michael* (1997), 119 Ohio App.3d 112, 694 N.E.2d 538, in support. In *Michael*, a juvenile defendant was adjudicated delinquent by reason of rape, attempted rape, and gross sexual imposition of an eight-year-old foster child who had been placed in his home and with whom he shared a bedroom. At trial, a clinical psychologist who evaluated the victim testified that there were three criteria he used to determine if a child had been sexually abused, one of which was the degree to which the child is conversant in sexual matters compared to "ordinary" children. Michael wanted to present evidence that the victim had been sexually abused prior to being placed in his home and that another person had been convicted of sexually abusing the victim in the identical

manner in which he had been accused of sexually abusing the victim. On appeal, Michael argued that the trial court erred in applying the rape shield law to exclude that evidence because it prevented him from showing an alternative source of the victim's knowledge of sexual conduct or activity.

**{¶93}** In a matter of first impression for the Second District Court of Appeals, the court observed that the average fact-finder would consider an eight-year-old to be a "sexual innocent" and would be more likely to believe the sexual experience they described in connection with the crime being prosecuted because they otherwise could have not described it. The court found that because an expert (i.e., the clinical psychologist) had testified that the victim's advanced knowledge of sexuality was an indicator of sexual abuse, it was probative for the jury to know that the victim had previously been victimized in a similar manner by another because the victim was of such a young age that their knowledge of sexuality was inappropriate. Consequently, the court held that the exclusion of all evidence of a victim's prior sexual abuse under those circumstances infringed on the defendant's constitutional right to present a necessary and critical element of his defense and was unreasonable and constituted an abuse of discretion. However, because the defendant's trial counsel was able to elicit testimony about the victim's prior sexual abuse from cross-examination of the clinical psychologist and a children services caseworker, the court effectively deemed it harmless error and affirmed the adjudication.

**{¶94}** We disagree with *Michael* to the extent that it stands for the proposition that the rape shield law has any application to prior sexual abuse suffered by a child victim. In construing the rape shield statute, "our paramount concern is the legislative intent" in enacting it. *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶21. To discern this intent, we must "read words and phrases in context according to the rules of grammar and common usage." *State ex rel. Lee v. Karnes*, 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶23. Ohio's rape shield law prohibits evidence of "specific instances of the victim's sexual

activity" unless one of four exceptions applies. The statute's reference to "specific instances of the victim's sexual activity" connotes volitional activity by the victim with another and not involuntary activity such as that which would stem from being subjected to sexual abuse.

**{¶95}** This interpretation of Ohio's rape shield statute is supported by the General Assembly's use of the "victim's sexual activity" throughout that provision. The statute specifically prohibits opinion and reputation evidence of the victim's sexual activity. Opinion and reputation evidence are methods of proving character. Evid.R. 405. Character is generally thought to include qualities, like honesty and integrity,[3] over which that person has control. Therefore, when the General Assembly sought to protect a victim from opinion and reputation evidence, it was contemplating evidence of a victim's sexual history over which they had control.

**{¶96}** The state interests identified by the Ohio Supreme Court in *Gardner*, supra, which are advanced by the rape shield law also support this understanding of the "victim's sexual activity." It is hoped that guarding the victim's sexual privacy and protecting them from undue harassment encourages the reporting of rape, thus aiding crime prevention. Interpreting the rape shield statute to exclude evidence of past sexual abuse does not further these state interests. While sexual abuse victims may very understandably be reluctant to disclose past instances of sexual abuse, that discomfort is different from the undue harassment that rape shield statutes were enacted to protect against – undue harassment that may be caused by the revelation of one's own history of questionable voluntary or consensual sexual activity.

**{¶97}** The rape shield law also was intended to prevent a defendant from exploiting a victim's sexual history to imply consent in the defendant's case. *State v. Ray* (June 11, 1992), 10th Dist. No. 91AP-1290. Since in this case defense counsel sought to introduce evidence that the victim had previously been sexually abused by a person other than the defendant, such evidence cannot be similarly exploited by

---

3. character. Dictionary.com. *Dictionary.com Unabridged.* Random House, Inc.
http://dictionary.reference.com/browse/character (accessed: August 31, 2011).

the defendant. Moreover, given that gross sexual imposition involving a victim under the age of thirteen is a strict liability offense in Ohio, *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, at ¶16, consent of the child victim be would unavailable as a defense. See R.C. 2907.05(D).

{¶98} Based on the foregoing, we construe that the legislative intent of Ohio's rape shield law was to address only past *consensual* sexual activity of the victim and not prior sexual *abuse* suffered by the victim. Therefore, the rape shield statute has no application in this case and the trial court erred in applying it.

{¶99} The question then becomes whether the exclusion of evidence of A.P.'s prior sexual abuse unconstitutionally infringed on Stoffer's ability to present a defense. The right of a criminal defendant to confront and cross-examine a witness on *relevant* matters is secured in the Sixth Amendment to the United States Constitution. *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 89 L.Ed.2d 674, 682-83. However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only *marginally relevant*." (Emphasis added.) Id.

{¶100} "Relevant evidence" is any evidence that tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. Generally, all relevant evidence is admissible. Evid.R. 402. Relevant evidence may be inadmissible, however, if its probative value is substantially outweighed by the danger of unfair prejudice. Evid.R. 403.

{¶101} In this case, evidence of the prior sexual abuse was not relevant. In his opening statement, the prosecutor never suggested that A.P.'s age-inappropriate sexual knowledge was proof that that A.P. was telling the truth. Rather, the prosecution relied on the photographs recovered from Stoffer's digital camera depicting A.P. in various stages of nudity in Stoffer's bedroom to bolster A.P.'s

credibility. While Dr. McPherson did testify that A.P.'s sexual knowledge must have been derived from specific experiences, he also testified that she was developmentally appropriate for her age:

{¶102} "Q. Would you please summarize for the jury the history that you provided and relied upon in regards to [A.P.]?

{¶103} "A. Yes. The history that we relied upon, apart from her past medical history, was an interview of the child.

{¶104} "And when we interview children we do a couple of things; first of all we want to make sure the child was developmentally appropriate, or that they understand their colors, they understand body parts, that they understand what inside and outside means. So we-- we make sure that the child is developmentally appropriate for her age. And [A.P.] was developmentally appropriate for her age.

{¶105} "Q. What's the next step?

{¶106} "A. Then typically what we do is we make sure they understand body parts, because children use different terms for body parts. We hear all kinds. And we wanted to make sure when she said something we knew what she meant. And so, she identified for us her private parts.

{¶107} "(Thereupon, Attorney McNicol marked for purposes of identification as State's Exhibit Number 15, being two anatomical drawings.)

{¶108} "Q. (By Attorney McNicol.) I'm going to hand you what I have marked as State's Exhibit Number 15. Do you -- do you recognize those two documents?

{¶109} "A. Yes, I do.

{¶110} "Q. What are they?

{¶111} "A. These documents are-- are photocopied from the medical chart in which the originals are kept. And these are the, what we call anatomical drawings that were used when, uh, [A.P.] was interviewed at our center.

{¶112} "Q. And there are some labeling on those documents, is there not?

{¶113} "A. Yes, there is.

**{¶114}** "Q. What-- what is the labeling?

**{¶115}** "A. Uh, [A.P.] identified the female chest region as boobies; she identified the vaginal area as the private spot. And then the anal region on the female as a butt. And then on the male anatomical drawing she identified the male penis as a private.

**{¶116}** "Q. Was she spoken to specifically about the -- the abuse involving this Defendant, Mike?

**{¶117}** "A. Yes. When we-- when we interviewed her after we obtain that she's developmentally appropriate, and we understand what terms she uses for private parts, we give the child the opportunity to tell us what happened. And we do it in a way where we don't make any presumptions. We want to make sure that someone hasn't misunderstood the child, or the child said something that was really an innocent type of interaction. So, we approach the interview that way. We keep our mind open.

**{¶118}** "And then we also ask questions in a way where we're not suggesting the child anything, or we're not putting things in the child's mind.

**{¶119}** "And so by taking that type of approach we allow the child to tell us their story. * * *" (Tr. 246-249.)

**{¶120}** Dr. McPherson then went on to relate A.P.'s very specific statements concerning Stoffer's sexual abuse of her.

**{¶121}** Lastly, even though we have determined that it ultimately was not error for the trial court to exclude the evidence of prior sexual abuse, albeit for different reasons, its exclusion would otherwise have been harmless error. Unlike in *Michael*, here there was independent, physical evidence indicating that inappropriate contact had occurred between A.P. and Stoffer. There was evidence presented that three photographs were retrieved from Stoffer's digital camera showing A.P. in various stages of nudity.

**{¶122}** Accordingly, Stoffer's fifth assignment of error is without merit.

**{¶123}** Stoffer's sixth assignment of error states:

{¶124} "THE TRIAL COURT ERRED IN PERMITTING WITNESS GIBBS AND WITNESS DR. MCPHERSON TO TESTIFY AS EXPERTS."

{¶125} Stoffer argues that despite not being qualified as an expert and the absence of any finding that Dr. McPherson or JoAnn Gibbs was an expert, they nonetheless proceeded to state their opinion as such. Concerning Dr. McPherson, Stoffer cites two examples of his testimony in support. First, Dr. McPherson testified that it was his expert opinion that a seven year old would not know the details of the sexual contact that was alleged to have occurred unless she had experienced it. (Tr. 250.) Second, Dr. McPherson opined that this was a case of sexual abuse within a reasonable degree of medical certainty. (Tr. 253.) Concerning JoAnn Gibbs, Stoffer refers to her testimony about the retrieval and authentication of the pictures retrieved from his digital camera.

{¶126} In response, the state points out that Stoffer did not object to any of the expert testimony and that their testimony nonetheless comported with Evid.R. 702, the rule of evidence which governs expert testimony. Because of Stoffer's failure to object to the testimony, the state contends that this assignment of error should be reviewed only for plain error and that if there was any error it did not rise to that level.

{¶127} Whether a witness is qualified to testify as an expert is a matter within the trial court's discretion. *State v. Awkal* (1996), 76 Ohio St.3d 324, 331. Therefore, we will review a trial court's decision to qualify a witness as an expert for abuse of discretion.

{¶128} Evid.R. 702 provides the qualifications a person must meet in order to be qualified as an expert:

{¶129} "A witness may testify as an expert if all of the following apply:

{¶130} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

{¶131} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

{¶132} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

{¶133} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

{¶134} "(2) The design of the procedure, test, or experiment reliably implements the theory;

{¶135} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

{¶136} Despite the trial court's failure to make a specific finding that Dr. McPherson was qualified to testify as an expert, he was nonetheless so qualified. He graduated from medical school and trained in general pediatrics. (Tr. 244.) He trained an additional two years in specifically diagnosing and treating children who have been abused. Id. By the time of trial, he had evaluated approximately fourteen-hundred children who were suspected of being abused. Id.

{¶137} Likewise, JoAnn Gibbs was qualified to testify as an expert. She testified that she was a certified forensic computer examiner by the International Association of Computer Investigative Specialists. (Tr. 270). She is also a certified electronics evidence collection specialist, holding a Microsoft Certified Professional Certification. Id. She also testified that she had been through numerous schools pertaining to the various software that they utilize at the Ohio Bureau of Criminal Identification and Investigation. Id.

{¶138} Based on the testimony presented by Dr. McPherson and JoAnn Gibbs concerning their professional qualifications, it cannot be said that any error in

the trial court's failure to make a specific finding that they were qualified to testify as experts rose to the level of plain error.

**{¶139}** Accordingly, Stoffer's sixth assignment of error is without merit.

**{¶140}** Stoffer's seventh assignment of error states:

**{¶141}** "THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE STATE EXHIBITS 1 THROUGH 7 AS NO PROPER FOUNDATION WAS LAID NOR WAS EXPERT TESTIMONY APPROPRIATE."

**{¶142}** Under this assignment of error, Stoffer reasserts his argument that he made under the previous assignment of error that JoAnn Gibbs was not found to be an expert and, therefore, should not have been able to offer her expert opinion regarding the retrieval of the pictures from Stoffer's digital camera. Stoffer also argues that the state failed to lay a proper foundation for admission as evidence. In particular, Stoffer takes issue with Gibbs subjecting the camera to analysis by "a memory stick reader" and that she used "specialized forensic software." (Brief of Defendant-Appellant, p. 25; Tr. 272, 274.) He also takes issue with Gibbs's inability to verify the dates the photos were taken. (Tr. 281-282.)

**{¶143}** The admission of photographs into evidence at trial is a decision left to the sound discretion of the trial judge. *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221, ¶33. Evid.R. 901 sets forth the requirements for authenticating evidence, including photographic evidence: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pursuant to Evid.R. 901(B)(9), "[e]vidence describing a process or system used to produce a result and showing that the process or system produces an accurate result" is one example of authentication conforming to the rule's requirements.

**{¶144}** In this case, JoAnn Gibbs testified concerning the authentication of photographs. Gibbs explained how she removed the memory stick from Stoffer's digital camera and inserted it into a memory stick reader. (Tr. 272.) She then

attached the memory stick reader to a write blocker device. (Tr. 272.) The write blocker device physically barricades the memory stick from the computer in such a way that the computer analyzing the memory stick cannot alter it in any way. (Tr. 273.) Using her computer and specialized software, she then proceeded to take a forensic image of the memory stick. (Tr. 273.) The forensic image is a bit for bit copy of every sector on the memory stick. (Tr. 273.) Again with specialized software, Gibbs was able to view everything on the memory stick, including deleted photographic images. (Tr. 274.) It was from those images that Gibbs located the photographs that formed the basis of the three counts of illegal use of a minor in nudity-oriented material or performance. (Tr. 275.) As for the date the photographs were taken, Gibbs explained that the date information contained with the digital image file was the date that was on the camera at the time the picture was taken. (Tr. 277.)

**{¶145}** There is no dispute that the digital camera seized from Stoffer's storage unit was in fact his. As the above testimony illustrates, the state adduced sufficient testimony from Gibbs to authenticate or identify the images comprising Exhibits 1 through 7 as duplicates of the images appearing on Stoffer's digital camera. In sum, the trial court did not abuse its discretion in admitting the photographs as evidence.

**{¶146}** Accordingly, Stoffer's seventh assignment of error is without merit.

**{¶147}** Stoffer's eighth and ninth assignments of error state, respectively:

**{¶148}** "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT/APPELLANT'S CRIMINAL RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL; ALTERNATIVELY, THE DEFENDANT/APPELLANT'S CONVICTION IS BASED UPON INSUFFICIENT EVIDENCE AND THEREFORE MUST BE REVERSED."

**{¶149}** "THE DEFENDANT/APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶150}** Though sufficiency and manifest weight involve two different standards of review, they will be discussed together for the sake of clarity and judicial economy and because both call for a review of the evidence, and because Stoffer advances the same arguments in support of each.

**{¶151}** Stoffer argues the conviction was based upon insufficient evidence and was against the manifest weight of the evidence because the evidence he heretofore argued was improperly admitted into evidence. He argues: (1) the digital camera was illegally seized; (2) the children were not competent to testify; (3) the experts were not properly qualified to testify; (4) impermissible hearsay was admitted; (5) the photographs were not properly authenticated; and (6) the court erroneously prohibited testimony concerning an alternative explanation for A.P.'s sexual knowledge.

**{¶152}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. *State v. Smith* (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. In essence, sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113, 684 N.E.2d 668.

**{¶153}** Alternatively, a weight-of-the-evidence challenge requires an appellate court to review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of the witnesses. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. In weighing the evidence and the reasonable inferences that can be drawn therefrom, if there exists two fairly reasonable views of the evidence, the reviewing court cannot simply substitute its judgment for the jury and choose the one it finds more persuasive or believable.

*State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.). In assessing the credibility of the witnesses, the reviewing court is guided by the principle that the credibility of the witnesses is primarily the responsibility and province of the jury. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O. 366, 227 N.E.2d 212. This is because the jury is in the best position to asses the credibility of a trial witness based on their observations of the witnesses' demeanor, gestures, and voice inflections. *Gore*, 131 Ohio App.3d at 201, 722 N.E.2d 125, citing *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276. In reviewing all of the evidence, a weight-of-the-evidence challenge requires the reviewing court to determine if the greater amount of credible evidence supported the jury's finding of guilt. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶154} Reversal based on a successful weight-of-evidence challenge is reserved only for the exceptional case in which the evidence weighed so heavily against conviction that the jury clearly must have lost its way, creating a manifest miscarriage of justice. Id. Indeed, reversing on weight of the evidence after a jury trial is so extreme that it requires the unanimous vote of all three appellate judges rather than a mere majority vote. *Thompkins,* 78 Ohio St.3d at 389, 678 N.E.2d 541, citing Section 3(B)(3), Article IV of the Ohio Constitution (noting that the power of the court of appeals is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses).

{¶155} The two counts of gross sexual imposition will be addressed first. Stoffer was convicted of two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), which provides:

{¶156} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

{¶157} "* * *

{¶158} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶159} "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶160} A rational trier of fact could have found beyond a reasonable doubt that Stoffer twice had sexual contact with A.P. A.P. testified that Stoffer had used his hands to touch her "boobies" and her "wrong place." This court has previously found similar testimony sufficient. See *State v. Rhodes*, 7th Dist. No. 99 BA 62, 2002-Ohio-1572 (where victim testified that the defendant testified that he put "his finger in her private.")

{¶161} Stoffer's conviction on the two counts of gross sexual imposition is also supported by the weight of the evidence. In addition to A.P.'s own testimony, Dr. McPherson testified to the statements A.P. made at the Tri-County Advocacy Center about Stoffer touching her breasts and pubic regions. Additionally, Dr. McPherson testified that, within a reasonable degree of medical certainty, A.P. had been sexually abused. (Tr. 253.)

{¶162} Turning to the three counts of illegal use of a minor in nudity-oriented material or performance, Stoffer was convicted of three counts of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(1), which provides:

{¶163} "(A) No person shall do any of the following:

{¶164} "(1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity * * * [.]"

{¶165} A rational trier of fact could have found beyond a reasonable doubt that Stoffer took the three nude pictures of A.P. found on his digital camera. A.P. testified that Stoffer took a picture of her "boobies" and her "wrong place." (Tr. 38.).

Therefore, there was sufficient evidence to support Stoffer's conviction on those counts.

{¶166} Further the weight of the evidence supports Stoffer's conviction on those three counts. Dan Valentine testified about retrieving the digital camera from Stoffer's storage unit to which Stoffer voluntarily directed him. (Tr. 232-233.) Joann Gibb testified about retrieving the images from Stoffer's camera. In addition, Dr. McPherson corroborated A.P.'s recounting of Stoffer taking the pictures of her in various stages of nudity. (Tr. 250.)

{¶167} Accordingly, Stoffer's eighth and ninth assignments of error are without merit.

{¶168} Stoffer's tenth assignment of error states:

{¶169} "THE TRIAL COURT ERRED IN FAILING TO MERGE THE OFFENSES IN THE SUPERCEDING INDICTMENT FOR PURPOSES OF SENTENCING."

{¶170} Stoffer argues that the two counts of gross sexual imposition were not allied offenses of similar import. He contends that there was no evidence presented to establish that the counts were committed at separate times or with separate animus. Therefore, he concludes, the trial court's sentence of five years in prison on each count to be served consecutively was contrary to law. Stoffer also contends that three counts of illegal use of a minor in nudity-oriented material were allied offenses of similar import. But since the trial court ordered concurrent sentences on those convictions, Stoffer concedes that the sentences were permissible.

{¶171} In response, the state argues that the testimony of the victim established that there were at least two separate incidents which gave rise to the two counts of gross sexual imposition.

{¶172} Stoffer failed to raise the issue of merger at sentencing and, therefore, waived all but plain error. "Because an error related to merger affects a defendant's right to protection from double jeopardy, and because an erroneous failure to merge convictions inevitably causes a different outcome in a defendant's trial, the failure to

merge convictions on allied offenses of similar import will almost always result in plain error." *State v. Haslam,* 7th Dist. No. 08-MO-3, 2009-Ohio1663, at ¶ 62. Thus, if the court here failed to properly merge Stoffer's convictions, the result is plain error.

**{¶173}** R.C. 2941.25 addresses the issue of merger and provides:

**{¶174}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶175}** "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**{¶176}** Recently, in *State v. Johnson*, 128 Ohio St.3d 153, 942 N.E.2d 1061, 2010-Ohio-6314, the Ohio Supreme Court adopted the new following approach to determination of allied offenses:

**{¶177}** "Under R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct. Thus, the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.

**{¶178}** "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. *Blankenship*, 38 Ohio St.3d at 119, 526 N.E.2d 816 (Whiteside, J., concurring) * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

**{¶179}** "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct,

i.e., 'a single act, committed with a single state of mind.' *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

**{¶180}** "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

**{¶181}** "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." (Emphasis sic.) Id. at ¶47-41.

**{¶182}** Applying *Johnson* to this case, we address the first question – whether it is possible to commit one offense *and* commit the other with the same conduct. Here, Stoffer's two convictions for gross sexual imposition were both for violations of R.C. 2907.05(A)(4) and, therefore, contain identical elements. Thus, it is possible to commit one offense *and* commit the other with the same conduct. So, the answer to the first question is yes.

**{¶183}** The second question is whether the offenses were committed by the same conduct, i.e., a single act, committed with a single state of mind. Here, the record reveals two distinct acts of sexual misconduct defined by R.C. 2907.01(B): touching the victim's breasts and touching her pubic region. So, the answer to the second question is no. Therefore, each offense charged constitutes a separate offense of gross sexual imposition, and the crimes do not constitute allied offenses of similar import which must be merged for conviction.

**{¶184}** Other districts are in accord. In *State v. Moralevitz* (1980), 70 Ohio App.2d 20, 24 O.O.3d 16, 433 N.E.2d 1280 the defendant was charged with three counts of gross sexual imposition: placing his finger between the victim's legs, putting his hand upon the victim's chest, and putting his tongue between the victim's legs. The Eighth District concluded that the acts occurred consecutively, determining that they were not allied offenses, "just as the commission of anal rape after vaginal rape constituted the commission of separate offenses in *State v. Ware* (1977), 53 Ohio

App.2d 210, 211 [judgment affirmed (1980), 63 Ohio St.2d 84] * * *." Id. at 28. See, also, *State v. Austin* (2000), 138 Ohio App.3d 547, 741 N.E.2d 927 discretionary appeal not allowed, 90 Ohio St.3d 1472, 738 N.E.2d 383 (3d Dist.) (concluding that touching of the victim's breast with defendant's hand and kissing the victim's breast with his mouth did not indicate a single, simultaneous incident; rather the acts occurred separately but in close proximity of time during the same extended assault of the victim).

**{¶185}** Applying that same analysis to the three counts of illegal use of a minor in nudity-oriented material or performance leads to the same conclusion. The first question is whether it is possible to commit one offense *and* commit the other with the same conduct. Here, Stoffer's three convictions of illegal use of a minor in nudity-oriented material or performance were all for violations of R.C. 2907.323(A)(1) and, therefore, contain identical elements. Thus, it is possible to commit one offense *and* commit the other with the same conduct. So, the answer to the first question is yes.

**{¶186}** The second question is whether the offenses were committed by the same conduct, i.e., a single act, committed with a single state of mind. Here, the record reveals three distinct acts of illegal use of a minor in nudity-oriented material or performance. Three separate pictures showing A.P. in various stages of nudity were retrieved from Stoffer's digital camera. While they may have been taken within seconds of each other, all three pictures were taken separately and at distinctly different times. So, the answer to the second question is no. Therefore, each offense charged constitutes a separate offense of illegal use of a minor in nudity-oriented material or performance, and the crimes do not constitute allied offenses of similar import which must be merged for conviction.

**{¶187}** Accordingly, Stoffer's tenth assignment of error is without merit.

**{¶188}** Stoffer's eleventh assignment of error states:

**{¶189}** "THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES UPON DEFENDANT/APPELLANT."

**{¶190}** Stoffer acknowledges the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, removing the requirement of specific findings for imposition of consecutive sentences. However, Stoffer maintains that the underlying legislative policy remains intact. Stoffer argues that the trial court's reasons for imposing consecutive sentences should be clear from the record in order to allow for a meaningful appellate review.

**{¶191}** Regardless of the "policy" argument advanced by Stoffer, this court is left only with what remains of Ohio's felony sentencing law and is bound by the Ohio Supreme Court's decisions in that regard. Prior to the Ohio Supreme Court's decision in *Foster*, the trial court was required to make certain findings in order to sentence an offender to consecutive sentences. R.C. 2929.14(E). However, in *Foster*, the Court found that provision unconstitutional because it statutorily required "judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant." Id. at paragraph one of the syllabus. As a remedy, *Foster* severed the provision in its entirety from the statute. Id. at paragraph two of the syllabus. Now, a sentencing court has "full discretion" to sentence an offender within the statutory range and is no longer required to make findings or give its reasons for imposing non-minimum, maximum, or consecutive sentences. Id. at paragraph seven of the syllabus. A sentencing court need only consider "R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender." *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, at ¶38.

**{¶192}** Accordingly, Stoffer's eleventh assignment of error is without merit.

**{¶193}** Stoffer's twelfth assignment of error states:

**{¶194}** "THE DEFENDANT/APPELLANT'S SENTENCE WAS NOT PROPORTIONAL RELATIVE TO THE DEFENDANT'S CONDUCT LEADING TO THE CHARGES AND THEREFORE THE SENTENCES ARE CONTRARY TO LAW."

{¶195} Stoffer argues that although the Ohio Supreme Court in *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, determined that R.C. 2929.14(E) was unconstitutional, the trial court should still engage in a proportionality analysis in furtherance of the statutory policy underlying that section. He contends there is nothing in the record to support a conclusion that the sentence was proportionate to his conduct.

{¶196} R.C. 2929.14(E) provided that before a court could sentence an offender to consecutive sentences that the trial court was required to find that consecutive sentences were "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." The court was also required to find that one of the three factors in R.C. 2929.14(E)(4)(a), (b), or (c) was applicable. The trial court was then required to provide reasons supporting its findings. R.C. 2929.19(B)(2)(c).

{¶197} Again, Stoffer concedes that under *Foster* the trial court is no longer required to making findings under R.C. 2929.14(E). 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, paragraph three of the syllabus. After severing that section from the statute, the Ohio Supreme Court then held that a sentencing court has "full discretion" to sentence an offender within the statutory range and is no longer required to make findings or give its reasons for imposing non-minimum, maximum, or consecutive sentences. Id. at paragraph seven of the syllabus. A sentencing court need only consider "R.C. 2929.11, which specifies the purposes of sentencing." "R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender," and any other statutes that are specific to the case. *State v. Mathis,* 109 Ohio St.3d 54, 846 N.E.2d 1, 2006-Ohio-855, ¶ 38. Consequently, the trial court was not required to engage in the proportionality analysis espoused in R.C. 2929.14(E).

{¶198} Accordingly, Stoffer's twelfth assignment of error is without merit.

{¶199} Stoffer's thirteenth assignment of error states:

{¶200} "DEFENDANT/APPELLANT'S SENTENCES ARE CONTRARY TO LAW AS THEY DO NOT SERVE THE OVERRIDING PURPOSES AND PRINCIPLES OF SENTENCING AS EXPRESSED IN ORC 2929.11."

{¶201} Under this assignment of error, Stoffer argues that imposition of maximum and consecutive sentences regarding the two counts of gross sexual imposition was not consistent with the purposes of felony sentencing set forth in R.C. 2929.11(A) to adequately protect the public and punish the offender. He posits that the trial court's imposition of consecutive sentences was not commensurate with the seriousness of his conduct and that the sentences do not comply with purposes of felony sentencing set forth in R.C. 2929.11(B). Again, he argues that the record is lacking for a meaningful appellate review.

{¶202} Appellate review of felony sentences is a very limited, two-fold approach, as outlined by the plurality opinion of the Ohio State Supreme Court in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶26. The first step requires appellate courts to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." Id. (O'Connor, J., plurality opinion). In examining "all applicable rules and statutes," the sentencing court must consider R.C. 2929.11 and R.C. 2929.12. Id. at ¶13-14 (O'Connor, J., plurality opinion). If the sentence is not clearly and convincingly contrary to law, the sentencing court's exercise of discretion "in selecting a sentence within the permissible statutory range is subject to review for any abuse of discretion." Id. at ¶17 (O'Connor, J., plurality opinion). Thus, an abuse of discretion is used to determine whether the sentence satisfies R.C. 2929.11 and R.C. 2929.12. Id. at ¶17 (O'Connor, J., plurality opinion).

{¶203} A sentencing court must consider the principles and purposes of sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, ¶38. The trial court in this case did not discuss the statutory principles and factors either at the sentencing

hearing or in the sentencing entry. However, the sentencing court need not make findings regarding these statutes. This court has held that a silent record raises the rebuttable presumption that the sentencing court considered the statutory sentencing criteria. *State v. James*, 7th Dist. No.07CO47, 2009-Ohio-4392, ¶50, citing *State v. Adams* (1988), 37 Ohio St .3d 295 and applying footnote from *Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. Only if the record affirmatively shows that the trial court failed to consider the principles and purposes of sentencing will a sentence be reversed on this basis, unless the sentence is strikingly inconsistent with relevant considerations. Id.

{¶204} The record does not affirmatively show that the court refused to consider the proper principles and factors. Nor is the sentence strikingly inconsistent with the pertinent considerations. In sum, Stoffer's sentence fell within the statutory range and was not clearly and convincingly contrary to law. Nor did the trial court's application of R.C. 2929.11 and R.C. 2929.12 to Stoffer's sentence constitute an abuse of discretion.

{¶205} Accordingly, Stoffer's thirteenth assignment of error is without merit.

{¶206} Stoffer's fourteenth assignment of error states:

{¶207} "THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES IN THE PRESENT CASE IS CONTRARY TO LAW AND/OR VIOLATES THE MANDATES OF ORC 2929.13(A)."

{¶208} Stoffer argues that the trial court made no finding that the imposition of consecutive sentences would not impose an unnecessary burden on state or local government resources, citing R.C. 2929.13(A). Without further explanation, Stoffer argues that it is "clear" in this case that the sentences imposed did "in fact" impose an unnecessary burden on state and local government resources.

{¶209} R.C. 2929.13(A) provides that a felony "sentence shall not impose an unnecessary burden on state or local government resources."

{¶210} "Just what constitutes a 'burden' on state resources is undefined by the statute, but the plain language suggests that the costs, both economic and

societal, should not outweigh the benefit that the people of the state derive from an offender's incarceration. Some have argued that in cases where the multiple life tails might be involved, incarceration of aged offenders who require the kind of nursing care needed by elderly people might place a burden on the state's resources. Of course this is true, but it is only one type of cost associated with incarceration. The court must also consider the benefit to society in assuring that an offender will not be free to reoffend. Many people sleep better at night knowing that certain offenders are incarcerated. They would no doubt consider a lengthy incarceration worth the cost of housing those offenders." *State v. Vlahopoulos*, 154 Ohio App.3d 450, 2003-Ohio-5070, 797 N.E.2d 580, at ¶5.

{¶211} As mentioned, Stoffer has provided no explanation or evidence that the sentence the trial court imposed would create an unnecessary burden on state or local government resources. Given the nature of the crimes perpetrated by Stoffer against his child-victim, it cannot be said that the public, and primarily its safety, would not benefit from having Stoffer incarcerated for fifteen years.

{¶212} Accordingly, Stoffer's fourteenth assignment of error is without merit.

{¶213} Stoffer's fifteenth assignment of error states:

{¶214} "DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE ERRORS AS SET FORTH HEREIN."

{¶215} Stoffer argues that due to the cumulative effect of the errors he alleged occurred in this case, he was denied a fair trial and substantive due process. He requests dismissal of all the charges against him and discharge from prison or, at the very least, a new trial.

{¶216} "The cumulative error doctrine refers to a situation in which the existence of multiple errors, which may not individually require reversal, may violate a defendant's right to a fair trial. To affirm a conviction in spite of multiple errors, we must determine that the cumulative effect of the errors is harmless beyond a reasonable doubt. The errors may be considered harmless if there is overwhelming evidence of guilt, if Appellant's substantial rights were not affected, or if there are

other indicia that the errors did not contribute to the conviction." (Internal citations omitted.) *State v. Anderson,* 7th Dist. No. 03-MA-252, 2006-Ohio-4618, at ¶80.

**{¶217}** As discussed above, the errors Stoffer alleges do not have merit, harmless or otherwise. Thus, no cumulative error exists.

**{¶218}** Accordingly, Stoffer's fifteenth assignment of error is without merit.

**{¶219}** The judgment of the trial court is hereby affirmed.

Vukovich, J., concurs.

DeGenaro, J., concurs.